# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

G.S., by and through his parents and next
friends, BRITTANY AND RYAN SCHWAIGERT;
S.T., by and through her mother and next friend,
EMILY TREMEL; and on behalf of those similarly situated,

    Plaintiffs,

v.                                 Case No. _____

GOVERNOR BILL LEE, in his official
capacity as GOVERNOR OF TENNESSEE,
SHELBY COUNTY, TENNESSEE,

    Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

---

Plaintiffs, school-age children with disabilities that render them medically vulnerable to COVID-19, by and through their parents and next friends, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated disabled children who at severe risk of illness and injury due to their disabilities and allege as follows:

### I. INTRODUCTION

**"If you want to protect your kid from the virus or from quarantine, the best way to do that is to have your kid in school with a mask."**

**– Governor Bill Lee, speaking about the COVID-19 Pandemic.**[1]

---

[1] https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe

1.     Despite his clear understanding of the necessity of both education and protecting the health and lives of children, Governor Lee issued Executive Order No. 84 allowing parents to opt their children out of the Shelby County Mask Mandate, which forced the parents of school children with disabilities to make the impossible decision of deciding whether to pull their children out of in-person learning or risk severe reactions or death as a result of COVID-19.

2.     Since June 29, 2021, the State of Tennessee has seen a dramatic rise in the increase of COVID-19 cases, mostly driven by the rapid spread of the Delta variant.  For example, on June 29, 2021, Tennessee had an average positive test rate for COVID-19 of 1.9%.  As of August 17, 2021, that average positive test rate had grown to 40.14%.[2]  In that same time period, the average daily cases per 100,000 people in Tennessee has grown from 1 to 62.[3]

3.     Like the rest of Tennessee, Shelby County has suffered from the spread of the COVID-19 Delta variant.  On June 15, 2021, the seven-day average of positive cases was only 27.[4]  As of August 18, 2021, Shelby County had a seven-day average of 730 new daily cases with a positivity rate of 21.5% for the week ending on August 14, 2021.[5]  This was the highest positive rate since the inception of the pandemic.[6]

4.     Shelby County's children are uniquely vulnerable due to a higher than usual number of children suffering from conditions that the CDC has determined make them medically vulnerable to and at severe risk from COVID-19.[7]  As of August 11, 2021, Shelby County had

---

[2] https://www.mayoclinic.org/coronavirus-covid-19/map/tennessee

[3] Id.

[4] Shelby County Health Department, COVID-19 Data Dashboard, https://insight.livestories.com/s/v2/1-2-case-counts/c4f65175-2433-47b7-b112-d62cf719af71

[5] Id.

[6] Id.

[7] https://www.localmemphis.com/article/news/health/coronavirus/shelby-county-highest-level-covid-19-related-child-inflammatory-disease-in-state/522-feabbb3d-3214-426c-ad02-45cf66867a6b

1,435 confirmed cases of school-aged children with COVID-19 diagnosed in just two weeks.[8]  The Delta variant has changed the virus' impact on children rendering children much sicker than previous versions of the virus.[9] Children in Shelby County are more likely to be overweight, have diabetes, hypertension, poor diet, asthma, and immunosuppression than other parts of the state.[10] This has led to the state's highest number of cases of Multi-System Inflammatory Syndrome ("MIS-C"), a rare and severe inflammatory disease affecting children with COVID-19. MIS-C causes serious inflammation of the heart, lungs, kidneys, brain, skin, eyes, and gastrointestinal organs.[11] Thus, while COVID-19 poses a high risk to children everywhere, it is especially threatening to children in Shelby County, so many of whom suffer from medical conditions that render them more vulnerable to COVID-19.

5.      At the same time and leading into the 2021-2022 school year, Governor Bill Lee and the people of Shelby County, Tennessee recognized the importance of in-person learning for school age children in comparison to virtual learning.  Indeed, Spring 2021 TCAP testing showed Shelby Schools students performed significantly lower than normal.  Students at lower grade levels had the biggest losses with a 17-percentage point drop in the number of students who are proficient or performing at the expectation for grade level.[12]

6.      As a result, the State of Tennessee, Shelby County Schools, and the Municipal School Districts stressed the importance of returning children to the classroom for in-person learning despite the threats of the surging COVID-19 virus.

---

[8] Id.

[9] Id.

[10] Id.

[11] Id.

[12] https://dailymemphian.com/article/23469/shelby-county-schools-test-scores-show-historic-learning-loss

7.      On August 6, 2021, the Shelby County Health Department, recognizing the threat of COVID-19 and the importance of in-person learning in the safest environment possible, issued on August 6, 2021, Amended Health Order No. 24.  This Amended Health Order was issued pursuant to the law newly enacted/amended by the General Assembly on May 26, 2021, Tenn. Code Ann. § 68-2-609, which specifically broadened the powers of the county health officer and empowered that officer to order, "Rules and regulations as are necessary to appropriate to protect the general health and safety of the county."  Tenn. Code Ann. § 68-2-609(4).

8.      Amended Health Order No. 24 requires "all K-12, Pre-K schools, and Daycare facilities to require universal indoor masking for all teachers, staff, students, and visitors to the schools, regardless of vaccination status."

9.      In part, the Shelby County Health Department issued this requirement based on the higher rates of severe outcomes for children infected with COVID-19 and the unavailability of a vaccine for children under 12 years of age.

10.     In response to rising infections caused by the hyper-contagious Delta variant, the CDC updated its "Guidance for COVID-19 Prevention in K-12 Schools" to recommend "universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status," noting that "protection against exposure remains essential in school settings." The American Academy of Pediatrics and Le Bonheur Children's Hospital both recommend universal masking in schools.

11.     Also on August 6, 2021, Governor Lee recognized the threat that the increasing positive case rates of COVID-19 posed to the citizens of Tennessee as well as the potential burden these numbers would place on our health care system issued Executive Order No. 83 declaring a continuing state of emergency and ordered 21 separate actions including the authorization of the use of the National Guard and State Guard to serve in health care and emergency services roles

and the authorization of out-of-state health care providers to practice in Tennessee.[13]  This order was issued pursuant to Tennessee Code § 58-2-107.

12.     Ten days later on August 16, 2021, in Executive Order No. 84, while noting the continuing state of emergency caused by the spread of COVID-19, Gov. Lee ordered that "a student's parent or guardian shall have the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions . . . ."

13.     While Gov. Lee's Executive Order No. 84 was purportedly issued pursuant to Tenn. Code Ann. § 58-2-107, it was not issued to "address[] the dangers presented to this state and its people by" the emergency present by COVID-19 and thus exceed his legal authority under the statute.

14.     Shelby County Health Department's Amended Health Order No. 24 remained in place until August 27, 2021.  During that time, the Shelby County Health Department refused to enforce the mask requirement due to Governor Lee's Executive Order No. 84.  Germantown Municipal School District and Collierville Municipal School District have thus followed the Governor's Executive Order No. 84 and hundreds of students are now attending school without a mask.  Shelby County Health Department then issued Health Order No. 25, which listed Governor Lee's Executive Order No. 84 as an exception to the county-wide school mask mandate, but stated that upon removal of that Executive Order, the county-wide school mask mandate would be enforced.[14]

15.     In doing so, Plaintiffs and putative class members allege that Governor Lee has violated the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

---

[13] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee83.pdf

[14] https://www.shelbytnhealth.com/DocumentCenter/View/2318/Health-Order-No-25

The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities. Plaintiffs in this matter are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19. These disabling, underlying medical conditions include a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord injury. All of these conditions have been identified by the Center of Disease Control (CDC) and the physicians at Le Bonheur Children Hospital as risk factors for severe COVID-19 infection or death—with or without the vaccination. Further, some of the Plaintiffs and the proposed Class are under the age of 12 years old (hereinafter referred to as the "Under-Twelve Subclass"), rendering them ineligible to receive the vaccine under the Food and Drug Administration regulations.

16. In spite of the recommendations of the CDC, the Shelby County Health Department, and Le Bonheur Children's Hospital on the importance of universal masking, Governor Lee's Executive Order No. 84 has inhibited the ability of the citizens of Shelby County, Tennessee and their elected and appointed government officials from taking the necessary collective action of masking in order to protect each other and those most vulnerable to COVID-19.

17.     Further, in doing so, the Governor has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety. This brutal choice forces children into a situation that violates Section 504 and the ADA.

## II. JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. §§ 2201–2202.

19.     Venue is proper in the United States District Court for the Western District of Tennessee, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## III. PARTIES

20.     G.S., by and through his parents and next friends, Brittany and Ryan Schwaigert, brings this action on behalf of himself and those similarly situated.  G.S. is a thirteen-year-old boy who attends West Middle School in the Collierville Municipal School District.  G.S., who has been identified by his school as a student with a disability, has tuberous sclerosis complex.  Tuberous sclerosis complex is a genetic disorder that causes polycystic kidney disease, epilepsy, and hypertension.  G.S. takes a daily regimen of chemotherapy to control the growth of his brain tubers and kidney cysts. This chemotherapy compromises his immune system. G.S. is also autistic. G.S. is a resident of Collierville in Shelby County, Tennessee.

21.     S.T., by and through her mother and next friend, Emily Tremel, brings this action on behalf of himself and those similarly situated.  S.T. is an eleven-year-old girl who attends Houston Middle School in the Germantown Municipal School District.  S.T., who has been identified by her school as a student with a disability, suffers from a chromosomal abnormality

that causes episodic ataxia and congenital nystagmus. One of the primary triggers of S.T.'s ataxia is increased body temperature caused by fever resulting in episodes marked by an inability to stand and difficulty talking. S.T. is a resident of Germantown in Shelby County, Tennessee.

22. Defendant Bill Lee is the Governor of the state of Tennessee and is the head of the Officer of the Governor. Defendant Lee enacted the executive order at issue in this action. Defendant Lee is sued in his official capacity as the Governor of the State of Tennessee and as head of the Office of the Governor, and he may be served with process by serving the State Attorney General Herbert Slattery III, Office of the Attorney General either by mail to P.O. Box 20207, Nashville, Tennessee 37202, or in person at 500 Charlotte Avenue, Nashville, Tennessee 37219. The state of Tennessee and the Office of the Governor are public entities within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

23. Defendant Shelby County, Tennessee is a municipality within the State of Tennessee and which is comprised of multiple governmental departments including the Shelby County Health Department. Shelby County, Tennessee and its divisions and departments are "public entities" within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a). Defendant Shelby County, Tennessee may be served with process by serving the Office of the County Attorney, Marlinee Iverson, at 160 N Main St. #660, Memphis, TN 38103.

### IV. FACTS

24. COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

25.     Experts agree that COVID-19 is primarily spread through respiratory droplets that are inhaled by people nearby.[15]  Asymptomatic carriers of COVID-19 can also transmit the disease. The current, most prevalent variant of COVID-19, knows as the Delta variant, is extremely infectious and is spread much more readily than even the original SARS-CoV-2 strain.[16]

26.     Shelby County hospitals are near capacity for beds and staff treating COVID-19. This includes Le Bonheur Children's Hospital, which has seen an unprecedented surge in the number of hospitalizations for COVID-19 among children.

27.     There is no cure for COVID-19.  The vaccine is also only currently approved for individuals 12 years and older and can prove less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

28.     School-aged children with certain disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[17]   And as with adults who

---

[15] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[16] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[17] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[18] The schools located within Shelby County, Tennessee regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population. Asthma alone impacts 9.5% of Tennessee's school age children.[19] Shelby County historically has the highest rate of inpatient hospitalization for asthma and emergency department visits in school age children.[20]

29. For school age children who are unable to be vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 can be successfully mitigated through masking and social distancing. In fact, the ABC Science Collaborative, led by top physicians on the staff of Duke University, found that that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[21] Moreover, "when teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[22]

---

[18] Id.

[19] Office of Policy, Planning and Assessment (2009). Childhood Asthma in Tennessee, 1997-2007. TN Department of Health, Nashville, Tennessee, p. 3, https://www.tn.gov/content/dam/tn/health/documents/Childhood_Asthma_Report_07.pdf

[20] Id. at 4.

[21] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

[22] Id.

30.     Thus, the CDC,[23] the American Academy of Pediatrics,[24] the Shelby County Health Department,[25] and Le Bonheur Children's Hospital and the University of Tennessee Health Sciences Center[26] have all recommended universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

31.     As schools have reopened, COVID-19 infections numbers among school aged children have continued to rise.  Collierville Schools recorded 72 positive student cases of COVID-19 with 241 students quarantined as of August 17, 2021.[27]  As of August 24, 2021, the number of COVID-19 positive cases for students since the start of the year has risen to 182[28] with 385 students in quarantine[29].

32.     Despite these numbers, parents of more than 1,392 students in Collierville Schools[30] and more than 1000 students in Germantown Municipal Schools[31] have opted out of the Shelby County mask requirement.

---

[23] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[24] https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/

[25] https://www.shelbytnhealth.com/DocumentCenter/View/2281/Amended-Health-Order-No-24

[26] https://www.lebonheur.org/files/patient-education-materials/Back-to-School%20Task%20Force%20Le%20Bonheur%20Children's%20UTHSC%20Recommendations%20Updated%20FINAL%20August%202021.pdf

[27] https://dailymemphian.com/article/23574/collierville-schools-students-covid-quarantine

[28] https://www.colliervilleschools.org/apps/pages/index.jsp?uREC_ID=293582&type=d&pREC_ID=2109390

[29] https://dailymemphian.com/article/23651/collierville-mask-opt-out-school#/questions

[30] Id.

[31] https://dailymemphian.com/section/suburbs/article/23710/houston-middle-covid-outbreak-germantown-gmsd-mask-opt-out#/questions

33.     At these schools, the named Plaintiffs and those similarly situated attend classes in close proximity to unmasked students, faculty, and staff.

34.     Named Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

35.     Meanwhile, the 2020 effort to educate children via a virtual platform resulted in significant learning loss.  Further, many children with significant disabilities are unable to learn without the hands-on attention of an in-person teacher and the stability of a daily in-school routine.

36.     G.S. also suffers from autism and is unable to focus on virtual instruction for more than 15 to 20 minutes. Socialization and play with other children are essential to G.S.'s ability to learn and grow.  He also requires therapies that are difficult to impossible to administer virtually. G.S.'s efforts to learn via online instruction were largely unsuccessful.

37.     S.T. tried virtual learning, but she requires occupational and visual impairment therapy as part of her Independent Education Plan.  She was unable to regularly receive these services while learning virtually and her return to in-person classes was necessary to continue to learn and grow.

38.     Gov. Lee's Executive Order allowing parents to opt-out of the County's mask mandate has placed the parents of those with disabilities, which make them more susceptible to severe reaction to COVID-19 infection, in the impossible situation of having to choose between the health and life of their children and the basic fundamental right of an education for their children.

39.     G.S. is 13-years old and suffers from tuberous sclerosis, which causes polycystic kidney disease, autism, epilepsy, and hypertension.  G.S. takes a daily regimen of chemotherapy to control the growth of his brain tubers and kidney cysts.  This regimen compromises his immune

system. These conditions, even when vaccinated, place G.S. at a heightened risk of severe infection or death from COVID-19.

40.     G.S. attends West Middle School in the Collierville Schools. G.S. due to his disability is not always physically capable of wearing a mask. Therefore, he must rely on his community to take steps to protect him from infection from COVID-19.

41.     Emily Tremel learned last week that an unmasked student in S.T.'s class at Houston Middle School was out sick with COVID-19. Because of S.T.'s exposure to this unmasked student, Emily Tremel had S.T. tested for COVID-19, and she tested positive on Monday, August 23, 2021.

42.     Emily Tremel is now caring for her daughter whose exposure to an unmasked student has put her health at significant risk.

### V. CLASS ALLEGATIONS[32]

43.     Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in Shelby County, Tennessee (the "Class").

44.     The Class is defined as follows: all current and future K-12 students attending public school in Shelby County, Tennessee during the coronavirus pandemic who are unable to obtain a vaccine either because of their age or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in Shelby County who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure

---

[32] Plaintiffs' Counsel will file a Motion for Class Certification on Monday, August 30, 2021.

and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.  The "Under-Twelve Subclass" are all individuals who are members of the Class who are also under the age of twelve years and therefore ineligible to receive any vaccine for COVID-19 as currently approved by the FDA.

45.     This action has been brought and may properly be maintained as a class action under federal law. It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

46.     Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

47.     Numerosity: On information and belief, there are well beyond the necessary number of children in the proposed Class to warrant class certification.  Between 2002 and 2006, the rate of asthma hospitalization in Shelby County was 301/100,000 population. Estimates show that there are more than 12,000 school aged students who suffer from asthma alone in Shelby County.[33]

48.     Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Defendant Gov. Bill Lee's policies and practices

---

[33] https://www.commercialappeal.com/story/news/2016/10/16/childhood-asthma-plagues-memphis/91347934/ ("The chronic, incurable illness afflicts 12,000 Shelby County Schools students and is the single most common reason for admissions at Le Bonheur.")

discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure of Defendant Shelby County, Tennessee to enforce its own order requiring masking in all school located in Shelby County discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act.

49.     Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending public school in Shelby County, Tennessee and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

50.     Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. The Named Plaintiffs have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained counsel with experience and success in the prosecution of civil rights litigation. Counsel for the Named Plaintiffs know of no conflicts among proposed Class members or between counsel and proposed Class members. Plaintiffs' chosen counsel includes:

(a)     Bryce Ashby of Donati Law, PLLC. Mr. Ashby is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses on employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, Americans with Disabilities Act, the Rehabilitation Act.  Mr. Ashby is counsel on two putative class actions arising out of violations of the Trafficking Victims Protection Act and has handled multiple collective actions under the Fair Labor Standards Act as lead counsel.

(b)	Brice M. Timmons of Donati Law, PLLC. Mr. Timmons is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Timmons has significant experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Timmons has handled and/or tried hundreds of cases during that time period. Mr. Timmons has also been appointed class counsel in two civil rights actions, including one arising under the Americans with Disabilities Act and is putative class counsel in an action arising under the Trafficking Victims Protection Reauthorization Act in the District of Wyoming in which he represents a putative class of former minor residents of facilities fraudulently purporting to treat mental health issues in minor children. Specifically, Mr. Timmons has been appointed lead class counsel in *Busby v. Bonner*, 2:20-cv-02359 (TNWD, 2020), in which, along with the American Civil Liberties Union and others, he represents a class of incarcerated persons who are especially vulnerable to COVID-19 on claims arising under various federal civil rights statutes including the Americans with Disabilities Act and in which he and his co-counsel received class certification prior to ultimately negotiating the most comprehensive consent decree achieved to date in the plethora of civil rights actions brought in response to the COVID-19 pandemic's impact on individuals medically vulnerable to COVID-19. He has also been appointed lead class counsel in *Turnage v. Oldham*, 2:16-cv-02907 (TNWD, 2016) in which he represents a putative class of persons subjected to overdetention due to the employment of a faulty software package to operate the county jail and criminal courts in claims arising under 42 U.S.C. §1983 and Tennessee common law in which he and his co-counsel

negotiated a settlement that has received preliminary approval and has been funded in the amount of $4.9 Million.

(c)     Robert Donati of Donati Law, PLLC. Mr. Donati is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses nearly entirely on representing individuals with disabilities including both children and adults.

(d)     Craig A. Edgington of Donati Law, PLLC. Mr. Edgington is a distinguished member of the Tennessee Bar and the Federal bar.  Like Mr. Timmons, his practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Edgington also has experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Edgington is also counsel in each of the civil rights or class actions identified by Mr. Timmons.

51.     Defendants have acted on grounds generally applicable to all proposed Class members. This action seeks declaratory and injunctive relief. Plaintiffs therefore seek Class certification under Rule 23(b)(2).

52.     In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

## VI. CAUSES OF ACTION

### First Cause of Action:
### Discrimination on the Basis of Disability in Violation of the ADA

53.     Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

54.     The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

55.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

56.     The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

57.     The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

58.     Governor Lee's Executive Order is denying local school districts the ability to provide the children in the instant matter with the protections they need to attend school safely.  In doing so, Gov. Lee, acting in his official capacity, has violated the regulations and provisions of the ADA:

   a.     Defendants are failing to make a reasonable modification, and/or are preventing the school districts attended by the Class from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

b.  Defendants are excluding, and/or are causing the school districts of Shelby County, Tennessee to exclude, Plaintiffs from participation in public education, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

c.  Defendants are failing to make, and/or causing Plaintiffs' school districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

d.  Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

59.  The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

60.  Defendant Lee, the State of Tennessee, and the County do not have the authority to circumvent the ADA and its protections for students with disabilities through executive order or guidance requirements.

61.  Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

**Second Cause of Action:**
**Violation of Section 504 of The Rehabilitation Act of 1973**
**Against All Defendants**

62.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

63.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

64.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the state of Tennessee.

65.    Defendant Lee, in his official capacity, is the recipient of federal financial assistance. Governor Lee's Executive Order is denying local school districts and public health authorities the ability to provide these children with the accommodations they need to attend school safely.

66.    Defendants have violated the regulations and provisions of Section 504, and/or caused Plaintiffs' school districts to violate the regulations and provisions of Section 504, as follows:

    a.    Defendants are excluding, and/or are causing Plaintiffs' school districts to exclude, Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

    b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

c.  Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' school districts, in violation of 34 C.F.R. § 104.4(b)(4).

67.  Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through executive order or guidance requirements.

68.  Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## VII. REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

69.  Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

70.  Plaintiffs seek a temporary restraining order enjoining Defendant Gov. Lee from enforcing Executive Order No. 84 and an injunction against Defendant Shelby County, Tennessee ordering it to enforce Health Order No. 25 requiring the mask mandate in Shelby County public schools without the exception ordered by Gov. Lee's Executive Order.

71.  Plaintiffs seek a preliminary injunction enjoining Defendant Gov. Lee during the course of this litigation from enforcing Executive Order No. 84 and an injunction against Defendant Shelby County, Tennessee, ordering it to enforce Health Order No. 25 requiring the mask mandate in Shelby County public schools without the exception ordered by Gov. Lee's Executive Order.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A.      Assume jurisdiction of this action;

B.      Certify this Petition as a class action;

C.      Declare that Defendant Lee's Executive Order No. 84 violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D.      Issue a temporary restraining order enjoining Defendant Lee from violating the Americans with Disabilities Act and Section 504 by permitting parents in the schools of Shelby County from opting out of the Shelby County mask mandate;

E.      Issue preliminary and permanent injunctive relief enjoining Defendant Lee and the State of Tennessee from violating the Americans with Disabilities Act and Section 504 by permitting parents in the school of Shelby County from opting out of the Shelby County mask mandate;

F.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.      Grant such other and further relief as may be just, equitable and proper.

Respectfully Submitted,

**DONATI LAW, PLLC**

<u>/s/Bryce W. Ashby</u>
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Robert A. Donati—TN Bar #25355
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
robert@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

*Counsel for Plaintiffs*