IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| G.S. by and through his parents and next friends, BRITTANY and RYAN SCHWAIGERT, S.T. by and through her mother and next friend, EMILY TREMEL, and on behalf of those similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )  Case 2:201-cv-02552-SHL-atc |
| GOVERNOR BILL LEE, in his official Capacity as GOVERNOR OF TENNESSEE, and SHELBY COUNTY, TENNESSEE, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

_____

**RESPONSE OF DEFENDANT GOVERNOR BILL LEE
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR TEMPORARY RESTRAINING ORDER**
_____

Defendant Bill Lee, Governor of the State of Tennessee (the "Governor" or "State Defendant"), by and through the Office of the Tennessee Attorney General, files this response in opposition to Plaintiffs' Motion for Temporary Restraining Order. Plaintiffs are not entitled to a temporary restraining order, because they are not likely to succeed on their claims. First, Plaintiffs seek relief that is also available under the Individuals with Disabilities Education Act (IDEA), 84 Stat. 175, as amended, 20 U.S.C. §§ 1400, *et seq.*, without exhausting the IDEA's administrative procedures to the same extent as would be required had the action been brought under the IDEA. *See* 20 U.S.C. § 1415(l). Second, Plaintiffs lack standing for their claims.

Third, Plaintiffs claims under the Rehabilitation Act and the Americans with Disabilities Act are doomed to fail. Plaintiffs' application for a temporary restraining order must be denied.

## ARGUMENT

### I. Temporary Restraining Orders

In determining whether to issue a temporary restraining order, the Court considers the same factors it considers in determining whether to issue a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, ____ U.S. ____, ____, 138 S.Ct. 1942, 1943 (2018) (quotation omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted). And in determining whether injunctive relief is proper, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*.

Four factors determine when a court should grant injunctive relief: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest. *Benisek*, 138 S. Ct. at 1943–44 (2018) (per curiam); 11A Charles Alan Wright *et al*., *Federal Practice and Procedure* § 2948 (3d ed. 1995 & Supp. 2021).

Whether the movant has a strong likelihood of success on the merits is a question of law. *See Ammex, Inc. v. Wenk*, 936 F.3d 355, 359-60 (6th Cir. 2019) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)). In addition to demonstrating a likelihood of success on the substantive claims, a plaintiff must also show a

likelihood of success of establishing jurisdiction. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). If a plaintiff cannot show a likelihood of jurisdiction, then the court will deny injunctive relief. *See id.*

## II. Plaintiffs Cannot Demonstrate a Likelihood of Success

Plaintiffs allege that the Governor's Executive Order Number 84 ("Executive Order") violates their children's rights under the Americans with Disabilities Act, ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). (Compl. ¶¶ 5, 53-68 (ECF 1).) The Executive Order grants "a student's parent or guardian . . . the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions." (Compl. ¶ 12.) Plaintiffs assert that their children are "students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19." (Compl. ¶ 15.) They claim that the Executive Order "inhibit[s]" Shelby County, Tennessee from subjecting "all K-12" students to "universal indoor masking" at school facilities. (Compl. ¶¶ 8, 16.)[1] According to Plaintiffs, the Executive Order requires them to choose "whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety." (Compl. ¶ 17.) This choice, Plaintiffs say, "violates Section 504 and the ADA." (*Id.*)

Plaintiffs' motion for a temporary restraining order is based on their ADA and Section 504 claims. (Br. in Support of Pl.'s Mot. for Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Motion"), p. 7 (ECF 2-1).) They request that the Court immediately enjoin the Executive Order to prevent Plaintiffs from making the "impossible decision" of

---

[1] The Complaint posits that one of the Plaintiffs' children "is not always physically capable of wearing a mask" while at school. (Compl. ¶ 40.)

enrolling their children into a remote learning option or allowing their children to remain in class at risk to "their health and safety." (Plaintiffs' Motion, p. 1.) They claim that "to maximize the ability of children with and without disabilities to attend in-person school in the safest manner possible, it is important that *all* students and staff wear masks and *not* be able to opt-out." (Plaintiffs' Motion, pp. 6-7.)

### A.     Plaintiffs failed to exhaust their claims.

Plaintiffs nowhere mention the IDEA in their Complaint or motion, even though, as discussed below, they seek relief that is available under the IDEA. The Sixth Circuit has held that a "district court exceed[s] its jurisdiction" by proceeding to the merits of a plaintiff's effective IDEA claim when the plaintiff failed to first exhaust administrative remedies. *Metro. Bd. of Public Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999).[2] Plaintiffs who seek relief that is available under the IDEA, even those who do so pursuant to other federal statutes, must exhaust administrative remedies available under the IDEA before bringing suit in federal court. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753-55 (2017); *see also MM ex rel. DM*, 303 F.3d at 536; *Guest*, 193 F.3d at 463. The exhaustion requirement thus applies to plaintiffs who bring suit under Section 504 of the Rehabilitation Act and Title II of the ADA rather than under the

---

[2] Other circuits agree. *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to grant subject matter jurisdiction to the district court." (internal quotation marks and alterations omitted)); *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) ("Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."); *MM ex rel. DM v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 536 (4th Cir. 2002) ("The failure of the parents to exhaust their administrative remedies . . . deprives us of subject matter jurisdiction over those claims [brought under the IDEA] . . . ."); *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002) ("[I]f a student with a disability seeks to bring a claim for educational injuries, then he must plead and show . . . that he has exhausted his administrative remedies under the IDEA . . . ."); *see also Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 Fed.Appx. 423, 430-31 (6th Cir. 2016) (observing the split in authority without deciding whether the exhaustion requirement is jurisdictional because the District Court relied on FRCP 12(b)(6) as an alternative ground for dismissal).

IDEA itself. *See Fry*, 137 S.Ct. at 754 ([The] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l ) merely by bringing her suit under a statute other than the IDEA."); *Batchelor*, 759 F.3d at 273 ("[A]ll of Appellants' claims made pursuant to the IDEA require exhaustion, as do any claims asserted under Section 504 and the ADA, if they seek relief that is available under the IDEA.") Since Plaintiffs do not allege that they have pursued, much less exhausted, the administrative remedies despite seeking relief that is available to them under the IDEA, the Court should find that it lacks subject-matter jurisdiction over their claims.

It is the office of the IDEA to provide parents with extensive procedural safeguards to ensure that each student is provided the free appropriate public education ("FAPE") sought by Plaintiffs here. 20 U.S.C. §§ 1400, *et seq*. These procedures must meet detailed requirements set out in federal regulation—34 C.F.R. Part 300—and govern all aspects of providing educational services to students with disabilities, from ensuring prompt identification and evaluation, to constituting school-based teams to develop an individualized plan for each student, to providing efficient dispute resolution options.

At the center of this process is the IEP—the "individualized education plan" (or "program") developed for each student by an "IEP team" comprising specific individuals with knowledge of the student, including parents, teachers, and a qualified representative of the school or district, among others. This team must meet at least once a year, although more frequent meetings may be convened by members of the team, including parents.

Because each IEP is based on the student's particular and individuated circumstances, the instruction, related services, accommodations, and educational placements will vary widely. Some, for example, may provide for accommodations within the general education classroom,

while others may place the student at a specific school or facility, and others may require services be provided in a hospital or home setting. These methods, and more, have been used by IEP teams to serve students with varying needs during the COVID-19 pandemic. Accommodations have included, for example, direct teacher instruction through online platforms, personnel providing in-home service, instruction in smaller classroom settings, and clustering of medically vulnerable students. School districts also offer virtual school programs which are available if appropriate as part of a student's IEP. If a particular service or setting is not assisting a student in making sufficient progress, the IEP team must consider other accommodations.

Finally, a parent who is not satisfied with the IEP or its implementation has several avenues for resolving this dispute. The IDEA sets out a number of procedural safeguards available to parents to ensure that students are receiving FAPE. In Tennessee, a parent who disagrees with the school district as to the student's education, including appropriate accommodations or setting, can take advantage of several dispute resolution options: (1) state-sponsored facilitated IEP meetings; (2) mediation with a state-provided third-party mediator; (3) a state complaint process through the Tennessee Department of Education; and (4) a due process complaint heard by an impartial hearing officer with the Division of Administrative Hearings. Significantly for the purpose of this action, Plaintiffs do not allege that they have attempted to avail themselves of the IEP process or any of these dispute resolution procedures.[3]

---

[3] Plaintiffs' counsel provided the Office of the Tennessee Attorney General with a copy of the Complaint in this cause at 3:17 p.m. on Friday, August 27, 2021. Afterward, an attorney with the Office agreed to wait outside his office building to accept service at counsel's request. The State has not been afforded a fair opportunity to obtain affidavits or declarations to detail the State's IDEA procedural safeguards at this juncture, and thus broadly outlines the IDEA scheme to inform the Court.

The IDEA "compels exhaustion when a plaintiff seeks 'relief' that is 'available' under" the statute. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753 (2017); *see also M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) ("[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute."). Even if a plaintiff "proceed[s] under the auspices of the ADA [and] the Rehabilitation Act . . ., the IDEA nonetheless requires them to first exhaust its administrative procedures and remedies prior to commencing suit under the" other statutes. *Sagan v. Sumner Cty. Sch. Bd.*, 726 F. Supp. 2d 868, 880 (M.D. Tenn. 2010); *see also M.TV.*, 446 F.3d at 1158 ("[C]laims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA.")

The relief Plaintiffs seek is "available under" the IDEA for purposes of the statutory exhaustion requirement. *See* 20 U.S.C. § 1415(l). Their complaint alleges requirements under their children's "Independent Education Plan;" asserts that their children have the "basic fundamental right of an education;"[4] and alleges that the Executive Order "impair[s]" their children's education, among other contentions. (Compl. ¶¶ 37, 38, 58, 66.) They similarly claim in their motion that the Executive Order may cause them to withdraw their children from in-person classes to "receive a less than full and adequate education," their children are "not capable" of participating in remote learning options, and that the Order denies their children "the benefits of an in-person public education." (Plaintiffs' Motion, pp. 1, 3-4, 10.)

---

[4] Not so under the United States Constitution. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-37 (1973)

In other words, Plaintiffs' claims directly implicate the IDEA's exhaustion requirement, regardless of how those claims have been styled under the ADA (Count 1) and Section 504 (Count 2). As the Supreme Court explained in *Fry v. Napoleon Community Schools*:

> [The IDEA's] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(l) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs … claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.

137 S. Ct. at 754 (footnote omitted); *see also id.* at 755 ("A court deciding whether § 1415(l) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.… Section 1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). When Plaintiffs contend that the Executive Order "exclude[s]" their children from receiving an in-person public education or "impair[s] accomplishment of the objectives" of their in-person education, (Plaintiffs' Motion, p. 9), that is precisely the purpose of the extensive procedural protections and FAPE requirements under the IDEA.

Plaintiffs thus cannot skirt the IDEA's exhaustion requirement by suing under a different statute. *Sagan*, 726 F. Supp. 2d at 880 (collecting cases); *see also Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) (stating that a plaintiff "cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute.") "The same misconduct committed by a school district may warrant relief under the IDEA, § 504, or the ADA. But if the complaint essentially alleges the denial of a FAPE, then the plaintiff must exhaust his administrative remedies." *Durbrow*, 887 F.3d at 1190. And "to

properly exhaust a claim that seeks relief for the denial of a free appropriate public education, the claim must proceed through an administrative hearing and receive a final decision from an administrative judge before review may be sought from a federal district court." *Id.* at 1191 (emphasis added).

Plaintiffs' ADA and Section 504 claims are therefore due to be dismissed—and cannot support their request for a temporary restraining order. *See id.* at 1197 ("The district court properly dismissed the Durbrows' § 504 and ADA claims for failure to exhaust administrative remedies ….").

### B. Plaintiffs Lack Standing.

Plaintiffs' claims also fail for lack of standing. Whether or not their children are "qualified individuals with a disability within the meaning of Section 504 . . . or the ADA" (Plaintiffs' Motion, p. 8), Plaintiffs cannot establish a "substantial likelihood of standing" that would entitle them to a temporary restraining order or other form of injunctive relief. *See Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255-56 & n.4 (6th Cir. 2018).

Under current doctrine, plaintiffs must make three showings in order to demonstrate Article III standing. First, they must establish that they have suffered an "injury in fact"—an invasion of a legally protected interest that is both (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks omitted). Second, they must demonstrate that there is a "causal connection" between this injury and the conduct of which they complain—i.e., the injury must be "fairly traceable" to the defendant's challenged actions and not the result of "the independent action of some third party not before the court." *Id*. Finally, he must show that it is "likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." Lujan, 504 U.S. at 560 (quotation marks omitted).  The party invoking federal jurisdiction bears the burden of establishing each of these elements.  *Waskul*, 900 F.3d at 255 n.3.

Here, Plaintiffs lack standing because they cannot satisfy the second or third prong of this inquiry.  Plaintiffs cannot demonstrate that their claimed injuries are fairly traceable to the Executive Order that they challenge, because they have not shown that the Executive Order itself will cause the alleged injuries.  Tennessee's school districts and the families with students attending public schools in those districts have responded to the challenges presented by COVID-19 in varying ways, and Plaintiffs cannot show that the Executive Order—which does not prohibit remote learning options, in-school alternatives, or other potential accommodations or modifications for individual students with disabilities—is preventing school districts and local school administrators from responding to their alleged concerns.

For similar reasons, Plaintiffs' requested temporary restraining order is unlikely to redress their alleged injuries.  *See Binno v. Am. Bar Assoc.*, 826 F.3d 338, 345 (6th Cir. 2016) (finding lack of standing where a court's favorable decision was "not likely to redress" the plaintiff's injury).  Despite Plaintiffs' claims to the contrary, enjoining the Executive Order would not result in the "implement[ation of] a universal mask mandate" that they seek.  (Plaintiffs' Motion, p. 10.)  Enjoining the order would not set aside the exemptions in the Shelby County Health Department's orders "mask mandate," (Compl. ¶ 14 n.14); will not prevent school districts from making or reversing their own decisions about local mask policies; will not require school administrators and teachers to enforce those policies uniformly; and will not force students to comply with those policies (such as they are) with a perfect track record.  Indeed, Plaintiffs appear to recognize that enjoining the Executive Order would not subject all students to

10

universal and mandatory mask requirements, as they say "[r]equiring all students to be masked is especially important when *individuals with disabilities are unable to wear masks due to their disabilities.*"⁵ (Plaintiffs' Motion, p. 6 (emphasis added).) So even if the Executive Order is enjoined, schools cannot implement Plaintiffs' requested "universal mask mandate."

More importantly, the Executive Order has no bearing on the educational alternatives or accommodations that may be available to students whose disabilities may make them reluctant to share a traditional classroom with other students who may not (or cannot) wear masks. That is, "a favorable decision by this [C]ourt is not likely to redress [Plaintiffs' claimed] injur[ies]." *See Binno*, 826 F.3d at 345.

### C. Plaintiffs' ADA and Rehabilitation Act claims otherwise fail.

Aside for Plaintiffs' failure to exhaust and lack of standing, their Rehabilitation Act and ADA claims necessarily fail. Plaintiffs do not state a Rehabilitation Act claim against the State Defendant because disparate-impact claims, as Plaintiffs allege here, are not cognizable under the Rehabilitation Act. *Doe v. BlueCross BlueShield of Tenn., Inc*., 926 F.3d 235, 241 (6th Cir. 2019).

Also, the Court lacks jurisdiction over Plaintiffs' disparate-impact claim under Title II of the ADA because Congress did not validly abrogate the State's immunity for the type of conduct alleged here. Congress has expressed a desire to abrogate Eleventh Amendment immunity for violations of the ADA. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); *see Carten v. Kent State Univ.*, 282 F.3d

---

⁵ Plaintiffs also say that "it is important that *all students* and staff wear masks and not be able to opt-out." (Plaintiffs' Motion, pp. 6-7 (emphasis added).) It is unclear how the Court can provide Plaintiffs with redress that: (1) imposes a universal mandate for all students that: (2) exempts Plaintiffs' children yet: (3) does not allow students the "ab[ility] to opt-out."

11

391, 394 (6th Cir. 2002). But the Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (Title I claim barred where there was no pattern of discrimination by the States and the remedy imposed by Congress was not congruent and proportional to the targeted violation); *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (Title II claim alleging denial of "the fundamental right of access to the courts" not barred); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (Title II claim not barred to the extent that the ADA-violating conduct also violates the Fourteenth Amendment). The Sixth Circuit has clarified that an alleged violation of the Equal Protection Clause based on heightened scrutiny as a member of a suspect class, as opposed to an alleged Due Process Clause violation, cannot serve as a basis for Title II liability. *See Popovich v. Cuyahoga Cnty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 812 (6th Cir. 2002) (en banc); *Mingus v. Butler*, 591 F.3d 474, 483 (6th Cir. 2010) (distinguishing between equal protection claims based on heightened scrutiny as a member of a suspect class and challenges under rational basis review for purposes of sovereign immunity).

To guide the lower courts in assessing whether the Eleventh Amendment proscribes an ADA Title II claim, the Supreme Court has set forth a three-part test:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159; *see Mingus*, 591 F.3d at 482.

The first step in the Eleventh Amendment analysis is to determine which aspects, if any, of the State's alleged conduct violated Title II of the ADA. Title II provides that "no qualified

12

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Plaintiffs' claim fails at the outset because they have not named a state-provided service, program, or activity from which they were excluded or denied benefits.  Plaintiffs allege that the Executive Order, which permits parents and students to choose whether to mask at school, implicates the educational services delivered by their local school district.  (Compl. ¶¶ 12-15, 17.)  The presence of unmasked children at school "forces" Plaintiffs to opt for virtual instruction in their homes.  (Id. at ¶¶ 14, 15, 17.) Plaintiffs thus challenge Executive Order's effect on their local school districts, asserting that the order prevents their schools from accommodating them.  (*See id*. at ¶ 58 (the State "is preventing the school districts attended by the [Plaintiffs] from making a reasonable modification" and from "mak[ing] their services, programs, and activities 'readily accessible' to disabled individuals.").) Since Plaintiffs identify no state service, program, or activity from which they are excluded or denied benefits, they have not identified conduct that violates Title II for purposes of overcoming Eleventh Amendment sovereign immunity.

## CONCLUSION

For the reasons stated, Plaintiffs' application for a temporary restraining order against the Governor's Executive Order should be denied.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


s/James R. Newsom III
James R. Newsom (TN BPR No. 6683)
Special Counsel
Matthew R. Dowty (TN BPR No. 32078)
Assistant Attorney General
Robert W. Wilson (TN BPR No. 34492)
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Robert.Wilson@ag.tn.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 30th day of August, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report. Parties may access this filing through the Court's electronic filing system.

s/Robert W. Wilson
Robert W. Wilson (TN BPR No. 34492)
Assistant Attorney General