UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

G.S., by and through his parents and next
friends, BRITTANY AND RYAN SCHWAIGERT;
S.T., by and through his parents and next friends,
EMILY TREMEL;
and on behalf of those similarly situated,

    Plaintiffs,

v.                                            Case No. 21-02552-SHL-atc

GOVERNOR BILL LEE, in his official
capacity as GOVERNOR OF TENNESSEE,
SHELBY COUNTY, TENNESSEE,

    Defendants.

_____

**AMICUS CURIAE BRIEF OF COUNCIL OF PARENT ATTORNEYS &
ADVOCATES ON THE SUBECT OF ADMINISTRATIVE EXHAUSTION**
_____

**COMES THE AMICUS, COUNCIL OF PARENT ATTORNEYS & ADVOCATES,** filing this Amicus Curiae brief for the Court's respectful consideration.

**1.0 BACKGROUND OF AMICUS**

**COUNCIL OF PARENT ATTORNEYS & ADVOCATES (COPAA)** is a not-for-profit national organization for parents of children with disabilities, their attorneys and advocates. COPAA has forty-eight (48) members within the state of Tennessee. While COPAA does not represent children with disabilities directly, it does provide resources, training, and information for parents, advocates, and attorneys to assist in obtaining the free appropriate public education (FAPE) such children are entitled to under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq. COPAA's attorney members do represent children in civil rights matters. COPAA also supports individuals with disabilities, their parents, and advocates in attempts to

1

safeguard the civil rights guaranteed to those individuals under federal laws, including the Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (codified as amended at 42 U.S.C. §1983) (Section 1983), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504) and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA).

COPAA's interest in this case is its deep commitment to ensuring that all children with disabilities have equal access to attend their public schools and obtain an education alongside their non-disabled peers without being subjected to an increased threat of injury or illness from Covid-19 and its variants.

Because of COPAA's concern for the rights of students with disabilities and their parents and the experience of its members in advocating for their rights, COPAA offers a unique perspective on exhaustion of administrative remedies. In fact, COPAA has extensive experience with the exhaustion of administrative remedies requirement, including filing an amicus curiae brief in *Fry v. Napoleon Community School*, 137 S. Ct. 743 (2017). COPAA has also previously filed as *Amici curiae* in the United States Supreme Court in *Endrew F. v. Douglas County School. District RE-1*, 137 S. Ct. 988 (2017); *Forest Grove School District. v. T.A.*, 557 U.S. 230 (2009); *Board of Education of New York v. Tom F.*, 552 U.S. 1 (2007); *Arlington Central School District Board. of Education v. Murphy*, 548 U.S. 291 (2006); *Schaffer v. Weast*, 546 U.S. 49 (2005); and *Winkelman v. Parma City School District*, 550 U.S. 516 (2006), and in numerous cases in the United States Courts of Appeal.

The Court is familiar with the facts having already undertaken an evidentiary hearing. COPAA therefore respectfully submits this *amicus curiae* brief to address the limited issue of whether administrative exhaustion under the Individuals with Disabilities Education Act (IDEA) is required for the gravamen of G.S.'s and S.T.'s Complaint.

## 2.0 EXHAUSTION AFTER *FRY*

G.S. and S.T. seek equal access to an in-person education no different from their non-disabled peers. In their Complaint, they allege the Governor's order excludes them from participating in equal educational opportunities under Title II of the ADA and Section 504 by, *inter alia*, denying them reasonable modifications. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7).

In the *Fry* case, the Supreme Court observed that "[a] school's conduct toward such a child—say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017). Similarly, G.S. and S.T., and persons with similar disabilities maintain that refusing the facial covering modifications may cause them physical injury, hospitalization, perhaps even death, conditions *obviously* unrelated to the IDEA.

The Supreme Court was clear in *Fry* that when determining the "gravamen" of the complaint, a plaintiff need *not* use the words "FAPE" or "IEP" on the face of the Complaint to allege a denial of FAPE. The *"substance,"* not "surface," of the Complaint matters, not labels:

> The use (or non-use) of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) "FAPE" or "IEP." After all, §1415(*l*)'s premise is that the plaintiff is suing under a statute *other than* the IDEA, like the Rehabilitation Act; in such a suit, the plaintiff might see no need to use the IDEA's distinctive language—even if she is in essence contesting the adequacy of a special education program. And still more critically, a "magic words" approach would make §1415(*l*)'s exhaustion rule too easy to bypass.

*Id.* at 755 (2017).

Under *Fry,* Governor Lee confuses what is the *gravamen*: the important distinction between an access case under the Title II of the ADA and one for FAPE under the IDEA.[1] *Fry* itself explains how, even where FAPE claims may "overlap" with non-FAPE claims, the Court's task is to determine the *gravamen,* or "crux," of the case.

Consider *Fry* itself. The child's need for a service dog at school, while delivered in the public-school setting, set forth an *access* case under Section 504 and Title II of the ADA. It was not dispositive that the district happened to propose a "human aid …as part of [the child's] individualized education program." *Id*. at 746.

On remand from the Supreme Court to determine the gravamen, the District Court in *Fry* found that exhaustion was *not* required because the student was not seeking "an amendment to an IEP…, a declaration that the student was denied a FAPE under an existing IEP, [or] an award of additional educational services to be provided." *E.F. v. Napoleon Cmty. Sch*., 371 F. Supp. 3d 387, 407 (E.D. Mich. 2019). Rather, the service dog was allowing the child *access to* her education, like a ramp allows access to a school.

Similarly, in *Sophie G.,* a Sixth Circuit case, the child was denied admission to an after-school program. The after-school program may have assisted her educationally, but FAPE was not the *gravamen.* Instead, as the Sixth Circuit explained, "The gravamen of Plaintiffs' complaint seeks access to subsidized childcare on equal terms, and not redress for the denial of a FAPE. Neither *Fry*'s clues nor the administrative proceedings suggest otherwise." *Sophie G. v. Wilson Cty. Schs*, 742 F. App'x 73, 80 (6th Cir. 2018).

---

[1] The confusion is perhaps understandable. *See, e.g., Exhausted and Confused: How Fry Complicated Obtaining Relief for Disabled Students*, 16 Duke J. Const. Law & PP Sidebar 34 (2021).

In its Surreply, Governor Lee correctly observes that the Court must determine whether the "crux" of this case is FAPE. (D.E. 31, Surreply, p. 2). Yet Governor Lee mistakenly concludes that a request for facial-covering is "precisely the type of claim the IDEA's extensive administrative process is intended to address." (*Id*.) Respectfully, it is not.

By reading FAPE *so broadly*, the Governor commits the same error the Sixth Circuit originally committed in *Fry*: the Sixth Circuit had asked whether the claims were "generally educational," *Id*. at 752, which the Supreme Court said is where it "went wrong in answering that question." *Id*. at 753.

The request for facial coverings is one that allows these children, due to their disabilities, to attend school with their non-disabled peers. It helps them avoid physical suffering or injury. It is akin to a request for a service dog, a ramp, or other modifications that allow children safe access to the school. In other words, at the core of their Complaint, the Plaintiffs are not seeking FAPE.[2]

Although not dispositive, the two "clues" fashioned by Justice Kagan in *Fry* bear this out. "[C]ould the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school;" and second, "could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id*. at 756. A refusal to allow a modification in the form of facial coverings in a public facility would also run afoul of the ADA, just as an adult teacher might similarly need a modification of facial coverings.

---

[2]  Additionally, it should be noted that exhaustion would also not apply in this instance because the class covers students with 504 Plans who do not even have IEPs.

**3.0 The *Perez* Case Does Not Require a Different Result**

Governor Lee cites the recent *Perez* decision, a 2-1 panel decision from the Sixth Circuit. In *Perez,* the child *was* found to be "seek[ing] relief for the wrong that the IDEA was enacted to address." *Perez v. Sturgis Pub. Sch.*, 2021 U.S. App. LEXIS 19004, at *9 (6th Cir. June 25, 2021). Specifically, the majority believed that Perez, a deaf student, seeking "the resources necessary to participate fully in class" through the ADA; that is, the "school denied him an appropriate education and papered over the deficiencies." *Id*. at *3, *7.

To the majority, the papering over deficiencies in his classroom learning represented a clear "focus on the adequacy of his education," such that no similar claim could be brought by against another public facility or by an adult. *Id*. Accordingly, exhaustion was required.[3]

Governor Lee reads too much into *Perez.* The student in *Perez* was not seeking injunctive relief to enable safe access without injury. Again, *Perez* was addressing relief for a past, deficient, classroom education that was "papered over," which the majority believed the IDEA was designed to address. By contrast, Governor Lee has enacted an Order that prospectively *obstructs* access to the school building itself, its attendant benefits, and subjects the children to physical sickness or injury. Even if there existed an arguable "overlap" of FAPE, as in *Fry,* clearly FAPE is not the gravamen; *access* to education through a reasonable modification is the essence of this case—the crux. Nothing in *Perez* suggests otherwise.

---

[3] The dissent by Judge Stranch suggested that the majority "disfigures Perez's allegations."

For all these reasons, IDEA exhaustion is not required, and the Court should proceed to address this matter under the ADA and Section 504.

        Respectfully Submitted,

        s/ Jessica F. Salonus
        COUNCIL OF PARENT ATTORNEYS AND ADVOCATES
        Jessica F. Salonus (TN Bar No. 28158)
        P.O. BOX 6767
        Towson, MD 21285
        Phone: 844-436-7224 ext. 707
        jessicas@copaa.org

        *Counsel for Council of Parent Attorneys and Advocates, Inc.*

**CERTIFICATE OF SERVICE**

       On this day of September 1, 2021, the undersigned served this electronically with the ECF system to include the following persons:

Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Robert A. Donati—TN Bar #25355
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
robert@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

James R. Newsom (TN BPR No. 6683)
Special Counsel
Matthew R. Dowty (TN BPR No. 32078)
Assistant Attorney General
Robert W. Wilson (TN BPR No. 34492)
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Robert.Wilson@ag.tn.gov

                                              s/ Jessica F. Salonus