# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| G.S., by and through his parents and next friends, BRITTANY AND RYAN SCHWAIGERT; S.T., by and through her mother and next friend, EMILY TREMEL; and on behalf of those similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>GOVERNOR BILL LEE, in his official capacity as GOVERNOR OF TENNESSEE and SHELBY COUNTY, TENNESSEE,<br><br>  Defendants. | No. 21-cv-02552-SHL-atc |

## ORDER GRANTING PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiffs' Complaint for Declaratory and Injunctive Relief for Violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, (ECF No.1), and Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), (ECF No. 2), both filed on Friday, August 27, 2021. Along with this TRO Motion, Plaintiffs filed a Motion to Certify Class by All Plaintiffs. (ECF No. 16.) On August 30, both Defendant Shelby County ("the County") and Defendant Governor Bill Lee ("Governor Lee" or "Defendant"[1]) filed Responses to Plaintiffs' TRO Motion. (ECF Nos. 23 & 24.) The Court also held a hearing on August 30, 2021 on Plaintiffs' TRO Motion, and set a hearing on the Motion for Preliminary Injunction on September 9, 2021. (ECF 26.) Following the hearing on the TRO Motion but later that same day, Plaintiffs filed a Reply to Defendant

---

[1] The County does not oppose the relief sought by Plaintiffs in the TRO Motion. Therefore, "Defendant" refers to Governor Lee.

Lee's Response.  (ECF No. 29.)  On August 31, 2021, Defendant Shelby County filed a Supplemental Response to Defendant Lee's Response, and Defendant Lee filed a Sur-Reply in opposition to Plaintiffs' TRO Motion.  (ECF Nos. 30 & 31.)

In their TRO Motion, Plaintiffs seek urgent relief preventing the enforcement of Governor Lee's Executive Order No. 84 ("Executive Order"), which provides parents or guardians of children in Tennessee the right to opt out of wearing masks in schools, even if the school, school system, local health department or other governmental entity otherwise requires that masks be worn.  (ECF No. 2.)  Specifically, Plaintiffs allege that, because the Executive Order prohibits enforcement of the Shelby County Health Department's mask mandate in schools in the County and thus denies children with disabilities their rights under the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") to access reasonable protection from the threat of exposure to COVID-19, only immediate restraint of Governor Lee's Executive Order will eliminate this violation of their rights.

At this stage, Defendant Lee argues that Plaintiffs have not properly exhausted their administrative remedies under the IDEA, have no standing to bring these claims, and improperly raise a disparate impact claim against the State under the Rehabilitation Act and ADA. Defendant also contends that sovereign immunity for violations of the ADA is not abrogated here because, he argues, Plaintiffs have not been excluded from a public service or program. However, the Court concludes that the IDEA exhaustion requirements do not apply here, Plaintiffs have standing, and their claims are not based on a disparate impact theory.  Moreover, Plaintiffs offered sufficient evidence at this stage for the Court to conclude that the Executive Order's opt-out provision interferes with Plaintiffs' ability to access services at their public schools through a reasonable accommodation – required mask coverings – as required by the

Shelby County Health Department's Health Directives. Accordingly, Plaintiffs' Motion for a Temporary Restraining Order is **GRANTED**.

## BACKGROUND

### I. COVID-19 in Tennessee

Since March 2020, the world has battled the spread of a deadly pandemic caused by the novel coronavirus known as COVID-19. While the contagion of the disease and breadth of its destruction has fluctuated over the past eighteen months, one thing remains constant: contracting this virus can cause serious illness, including death, at rates this country—and the world—have not seen from any other contagious disease in the last 100 years. (See ECF No. 2-1 at PageID 36.) The Centers for Disease Control and Prevention (CDC) has listed factors that identify certain people at higher risk of severe illness or death from COVID-19, including factors that impact children. (Id.) The CDC's research "suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19 [and] [s]imilar to adults, children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19." (ECF No. 2-1 at PageID 33, n.2.) COVID-19 has also caused business and school closures across the United States, and decreased the performance of students who had to undertake virtual schooling as a result of measures put in place to protect them from exposure to COVID-19.[2]

---

[2] See ECF No. 1 at PageID 3 ("Indeed, Spring 2021 TCAP testing showed Shelby Schools students performed significantly lower than normal. Students at lower grade levels had the biggest losses with a 17-percentage point drop in the number of students who are proficient or performing at the expectation for grade level.").

3

Despite the introduction of vaccines, COVID-19 continues to spread. Since June 2021, the State of Tennessee has seen a dramatic increase of COVID-19 cases, particularly among the unvaccinated, driven by the spread of a highly contagious variant of the virus, the Delta variant. (ECF No. 1 at PageID 2.) As of August 18, 2021, Shelby County has had the "highest positive rate since the inception of the pandemic" – 21.5%. (Id.)

As of mid-August, Shelby County had over fourteen hundred school-aged children diagnosed with COVID-19. (ECF 1 at PageID 2-3.) The children in Shelby County, Tennessee are "uniquely vulnerable" to the risk of COVID-19 due to a variety of factors, starting with the fact that children under the age of 12 generally cannot be vaccinated. (ECF No. 1 at PageID 2; ECF No. 2-1 at PageID 42.) Further, children in Shelby County are more likely to have many of the risk factors, including obesity, diabetes, hypertension, poor diet, asthma, and immunosuppressed systems, associated with more negative consequences from a COVID-19 diagnosis. (ECF No. 1 at PageID 2-3, citing Jeni Diprizio, "Shelby County has highest level of COVID-19 related child inflammatory disease in the state," ABC Local 24, available at https://www.localmemphis.com/article/news/health/coronavirus/shelby-county-highest-level-covid-19-related-child-inflammatory-disease-in-state/522-feabbb3d-3214-426c-ad02-45cf66867a6b.)

II. **Mitigation Strategies in Light of COVID-19**

The CDC, World Health Organization, and other public health experts conclude that "the only way to limit illness and death from COVID-19 until a larger proportion of the population has been vaccinated is through a combination of measures, including: <u>individual behaviors such as wearing masks</u>, maintaining physical distance from others, washing hands and completely avoiding contact with others when ill; widespread testing with isolation of cases and quarantine

of close contacts; and community social distancing measures." (ECF No. 2-1 at PageID 36-37 (emphasis added).) Masks – whether surgical, cloth, synthetic, or something in between – have been found to be extremely effective in mitigating the spread of the COVID-19 virus. Indeed, one of Plaintiffs' experts (Dr. Sara Cross) states that the "use of masks is associated with a large reduction in risk of infection (17% risk of infection in unmasked individuals versus 3% risk of infection in masked individuals). . . [and that] [u]niversal masking has been shown to reduce transmission of COVID-19 by 79% when individuals are in close contact indoors with an infected individual." (Id. at PageID 37.)

Public health and educational policy-makers in Tennessee have noted that masks remain a critical safeguard for children against COVID-19 exposure. On August 6, 2021, the Shelby County Health Department issued Amended Health Order No. 24, requiring "all K-12, Pre-K schools, and Daycare facilities to require universal indoor masking for all teachers, staff, students, and visitors to the schools, regardless of vaccination status." (ECF No. 1 at PageID 4.) That same day, Governor Lee issued Executive Order No. 83 declaring a continuing state of emergency due to COVID-19 and, among other things, the authorization of more health care providers to bring their services to Tennessee. (Id. at PageID 4-5.) Governor Lee himself stated on August 25, 2021 that "[i]f you want to protect your kid from the [COVID-19] virus or from quarantine, the best way to do that is to have your kid in school with a mask." (ECF 2-1 at PageID 33.)

### III. Plaintiffs' Lawsuit

Plaintiff G.S. is a thirteen-year-old boy attending West Middle School, a public school within Shelby County. (ECF No. 1 at PageID 7.) G.S., identified as a student with a disability, must take a daily regimen of chemotherapy to control the consequences of his genetic disorder,

and this medicine compromises his immune system. (Id.) Despite being vaccinated, he is therefore at a heightened risk of severe injury or death if he contracts COVID-19, and cannot wear a mask due to his disability. (Id. at PageID 13.) S.T. is an eleven-year-old girl attending Houston Middle School, another public school in Shelby County. (Id.) S.T. suffers from a chromosomal abnormality that causes episodic ataxia, which can be triggered by increased body temperature, such as what occurs when someone has a fever. (Id. at PageID 8.) Both students are enrolled in schools in Shelby County, and these schools are therefore subject to Shelby County Health Department regulations. Both students face increased risks of severe illness or death if they contract COVID, and both had difficult, unsuccessful experiences with virtual learning over the past year. (Id. at PageID 12.)

On August 16, 2021, Governor Bill Lee issued Executive Order No. 84, which provided a broad opt-out provision to any mask mandate applicable to schools in Tennessee, and here applicable to Shelby County's Amended Health Order No. 24. See Exec. Order No. 84, State of Tennessee (August 16, 2021) ("a student's parent or guardian shall have the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, by affirmatively notifying in writing the local education agency or personnel at the student's school."). Following the Governor's decree, the Shelby County Health Department refused to enforce its mask requirement. (ECF No. 1 at PageID 5.) Shelby County Health Department also then issued Health Order No. 25, officially listing Executive Order No. 84 as an exception to the county-wide mandate on wearing masks in schools. (Id.)

Since the Executive Order was instituted, "parents of more than 1,392 students in Collierville Schools and more than 1000 students in Germantown Municipal Schools," all

located in Shelby County and encompassing Plaintiffs' schools, "have opted out of the Shelby County mask requirement." (Id. at PageID 11.) On August 23, 2021, because of exposure to an unmasked student with COVID-19 in her classroom, Plaintiff S.T. tested positive for COVID. (Id. at PageID 13.)

## LEGAL STANDARD

"Generally, the plaintiff bears the burden of establishing his entitlement to a preliminary injunction." Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009). A motion for a temporary restraining order is considered under the same standard as a preliminary injunction. See ABX Air, Inc. v. Int'l Bhd. Of Teamsters, Airline Div., 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). A court is to consider the following four factors in determining whether a plaintiff is entitled to a temporary restraining order or other preliminary injunctive relief: (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued; (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and (4) whether the public interest would be served by the issuance of a preliminary injunction. Sandison v. Michigan High School Athletic Ass'n, 64 F.3d 1026, 1030 (6th Cir. 1995).

"The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied[.]" Johnson Controls, Inc. v. Odom, 2013 WL 12120272 (E.D. Mich. Aug. 14, 2013). The third and fourth factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

# ANALYSIS

Based on Plaintiffs' TRO Motion and the other documents filed related to the Motion, Plaintiffs' Complaint, and the testimony and evidence offered at the hearing on Plaintiffs' TRO Motion, the Court finds that good cause exists to issue a Temporary Restraining Order against Defendant Lee pursuant to Federal Rule of Civil Procedure 65. Plaintiffs have carried their burden of proof as to all four factors, supporting the issuance of a Temporary Restraining Order. Each factor is addressed below, along with Defendant Lee's arguments in opposition.

## I. Likelihood of Success on Merits

### A. Plaintiffs' Standing

As a prerequisite to any claim, standing must be present for the Court to exercise its limited jurisdiction. Friends of the Earth, Inc. v. Laidlaw Entl. Servs., 528 U.S. 167 (2000). Here, Defendant Lee contends that Plaintiffs do not have standing. The Court disagrees.

To satisfy the standing requirements of Article III, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc., 528 U.S. at 180–81.

Defendant Lee argues that Plaintiffs fail to satisfy the second and third prongs of the standing inquiry. First, he argues that Plaintiffs' injury is not fairly traceable to the Executive Order. According to Governor Lee, because Tennessee's school districts and families in those districts have had differing responses to managing the COVID-19 crisis, Plaintiffs "cannot show that the Executive Order—which does not prohibit remote learning options, in-school alternatives, or other potential accommodations or modifications for individual students with

disabilities—is preventing school districts and local school administrators from responding to their alleged concerns." (ECF No. 24 at PageID 124.)

Plaintiffs' filings and the testimony provided by Plaintiffs' witnesses refute this argument. Brittany Schwaigert, G.S.'s mother, testified that the Executive Order changed everything. (ECF No. 26, Brittany Schwaigert Testimony.) Before the Executive Order, Collierville Schools were enforcing Shelby County's mask mandate. After the Executive Order and Shelby County's subsequent adherence to the Order, G.S., who needs peer interaction with neurotypical children, is now not allowed to go to PE class, the one place he accessed that interaction; he is forced to go to school fifteen minutes late, therefore missing itemized time he is provided within his individualized education plan ("IEP"); and overall G.S. now has no immersion with his neurotypical peers. (Id.) In other words, the injury to G.S. is not only fairly traceable, but directly traceable to Defendant Lee's allowance for children to opt out of wearing masks.

Second, Defendant Lee argues that the requested Temporary Restraining Order is unlikely to redress Plaintiffs' alleged injuries because it will not directly result in the "implementation of a universal mask mandate." (ECF No. 24 at PageID 124 (internal quotations omitted).) However, as Defendant Shelby County pointed out in its Response (ECF No. 30 at PageID 240), Defendant Lee failed to acknowledge that Amended Health Order No. 25, in effect as of August 31, 2021, would reinstate the former County mask mandate if Governor Lee's opt-out provision were no longer in place. (See id. ("the referenced exemption states that individuals exempted from the mask mandate include those that are 'K-12 grade student and your parent has submitted a written notification that you are opting out of wearing a mask according to Governor Lee's Executive Order No. 84, <u>unless that order is no longer in effect</u>.'") (emphasis added).

Thus, by its plain language, the Shelby County Amended Health Order No. 25 *would* reinstate the mask mandate applicable throughout the County. As such, enjoining the Executive Order would redress Plaintiffs' alleged injuries.

Plaintiffs have met the standing requirements.

### B. Exhaustion Requirement under IDEA

In addition to standing, Defendant Lee argues that another prerequisite to these claims has not been fulfilled, specifically exhaustion of administrative remedies. Defendant Lee contends that Plaintiffs first must exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA) before proceeding to the merits of claims under the ADA or Rehabilitation Act. (ECF No. 24 at PageID 118.) However, as is discussed below, the IEPs for G.S. and S.T. are not the crux of this case. Instead, Plaintiffs seek to protect their bodily health within a public educational setting – protection provided by the Shelby County Health Department through the enforcement of a mask mandate applicable to schools in the County, now restricted by Governor Lee's Executive Order. Because Plaintiffs seek redress from the harm caused by an Executive Order that prevents their ability to access critical public programs and services, the exhaustion requirement under IDEA does not apply. Therefore, the Court has also not "exceeded its jurisdiction" by considering these claims. See Metro. Bd. of Public Educ. v. Guest, 193 F.3d 457, 463 (6th Cir. 1999) (jurisdictional challenge applying only to when district court is reviewing administrative decisions).

The IDEA "compels exhaustion when a plaintiff seeks 'relief' that is 'available' under" the statute. Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 753 (2017). Even if a plaintiff "proceed[s] under the auspices of the ADA [and] the Rehabilitation Act . . ., the IDEA nonetheless requires them to first exhaust its administrative procedures and remedies" before

proceeding with claims under other statutes where a claim could be brought under the IDEA. Sagan v. Sumner Cty. Sch. Bd., 726 F. Supp. 2d 868, 880 (M.D. Tenn. 2010). However, "if the remedy sought is not for the denial of a free appropriate public education (FAPE), then exhaustion of the IDEA's procedures is not required." Fry, 137 S. Ct. at 754.

To determine whether a plaintiff is seeking relief for the denial of a FAPE, the Supreme Court has instructed that "a court should look to the gravamen of the Plaintiffs' complaint." Id.; see also Perez v. Sturgis Pub. Sch., 3 F.4th 236, 241 (6th Cir. 2021) ("[T]he Supreme Court has told us to look beyond the surface of the pleadings and ask: is the crux of the complaint the denial of a free appropriate education?"). The petitioners in Fry, parents of a child with cerebral palsy, requested permission for her service dog to accompany her to kindergarten. Fry, 137 S. Ct. at 751. School officials refused the request because the child already had a "human aide" included as part of her IEP. Id. Overturning the Sixth Circuit's requirement of exhaustion under the IDEA for petitioner, the Supreme Court concluded that petitioners' claims under the Rehabilitation Act and ADA may not simply be "educational," as the Sixth Circuit had found, but appeared rooted in a more fundamental concern regarding "non-discriminatory access to public institutions." Id. at 756. Even with some "overlap in coverage" between the three statutes, the petitioners' ADA and Rehabilitation Act claims could go forward if the issue was about accessing education, not about the education itself. Id.

Two questions provided in Fry, and reiterated by the Sixth Circuit in Perez, serve as "clues" to determining the gravamen of a complaint: "could the plaintiff have brought 'essentially the same claim' against a different kind of public facility, like a public theater or library? . . . And could an adult at the school, like an employee or a visitor, have 'pressed essentially the same grievance?" Perez, 3 F.4th at 240-41.

11

In Perez, the answer to both questions was no. Perez, a 23-year old deaf student whose assigned classroom aide was ineffective, filed a complaint focused on "the adequacy of his education," and the fact that "the school failed to provide him with the educational services he needed." Id. at 241. The Sixth Circuit concluded that Perez "could not bring essentially the same claim against a facility that had no responsibility to educate him and no opportunity to conceal his lack of progress." Id. Furthermore, the school would not have a similar obligation to an adult to provide necessary educational services, so an adult could not have pressed this grievance. Id. Accordingly, IDEA exhaustion was required.

In this case, Defendant Lee argues that the answer is no to both questions, meaning that Plaintiffs must first exhaust administrative requirements under IDEA before filing suit in federal court. In response, Plaintiffs argue that the answer to both questions is yes. The Court agrees with Plaintiffs. First, Plaintiffs, children with disabilities suffering from a severe threat of injury if exposed to COVID-19, could similarly be denied access to the benefits of other public entities, such as public transportation or a public hospital. Moreover, the Governor's Executive Order No. 84 is applicable in school settings that are not directly related to a child's learning, including "on a school bus, or at [undefined] school functions." Thus the threat of exposure to unmasked children with COVID-19 is present in non-educational areas of schools as well as in other public facilities.

Further, activities that Plaintiffs cannot access at school are not solely educational. For instance, G.S.'s mother testified that he is not allowed to go to P.E. class, preventing him from obtaining physical exercise and neurotypical peer interaction. (ECF No. 26, Brittany Schwaigert testimony.) In addition, G.S. must come to school 15 minutes late every day to be sure he does not expose himself to COVID-19 by walking in the hallways at the same time as other kids –

12

hardly an essential component of an education, but more akin to other non-educational public settings. (Id.) Thus, Plaintiffs could bring this claim against different kinds of public facilities, and have raised this claim involving non-educational aspects of their schools. The answer to question one of Fry's inquiry is yes.

Second, a school employee could likely file the same sort of grievance as Plaintiffs have in this case, if by virtue of their disability they were similarly under threat of severe illness or death by exposure to COVID-19, and their job (as a teacher, custodial employee, or otherwise) brought them into contact with children who opted out of the County's mask mandate pursuant to Governor Lee's Executive Order. Their claim for employment discrimination based on disability could not, in this instance, be brought under IDEA or remedied through an IEP, but could possibly be brought under the ADA or Rehabilitation Act. Question two demands a "yes" answer as well.

A common sense analysis of this situation reinforces the answers to these two critical questions. Plaintiffs are not suing for individualized, specific claims under their IEPs. In fact, G.S.'s mother stated that G.S. had already received accommodations under the IEP that were still not sufficient because it only required masking by adults providing services to him, but not by children who are all around him. (ECF No. 2-2 at PageID 46.) In this instance, *nothing* could be put in place sufficient to reasonably protect G.S. and others with disabilities while Governor Lee's Executive Order still stands. It follows that the type of relief sought in this case is not contemplated through the IEP or administrative process.[3] This matter does not turn on an

---

[3] This point is buttressed by the scope of Plaintiffs' proposed class, which encompasses children who do not have IEPs and are not eligible for relief under the IDEA because "they are not 'a child with a disability' within the meaning of 20 U.S.C. § 1401(3)." (ECF No. 29 at PageID 234.) However, these children may qualify as disabled under the ADA. (Id.) The Court reserves determination of Class Certification until briefing on the issue is completed.

individualized education plan; it turns on whether Governor Lee's ban on the enforcement of public health regulations promulgated by the County violates the ability of individuals with disabilities to access these public programs and services. The "gravamen" of Plaintiffs' claims is their access to education through a reasonable modification – indeed, one supported by the County's own Health Department and applicable to Plaintiffs' schools. As such, this claim rightfully must be considered an ADA and Rehabilitation Act claim, not one under the IDEA. No exhaustion requirements apply here.

> C. Plaintiffs Likely to Satisfy ADA and Rehabilitation Act's Legal Requirements

Finally, the Court must consider whether these claims are likely to succeed, based on the record at this point. The ADA and the Rehabilitation Act "in this circuit share the same substantive standard." Zibbell v. Mich Dept of Human Servs, 313 Fed.Appx. 843, 849 (6th Cir. 2009) (quoting Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007). Thus, the court reviews claims under the Rehabilitation Act as though they were brought under the ADA. Id. (quoting Doe v. Salvation Army in the United States, 531 F.3d 355, 357 (6th Cir. 2008).

The Court must first address Defendant Lee's argument that the Plaintiffs brought a disparate impact claim, which is not cognizable under the Rehabilitation Act. (ECF No. 24 at PageID 25; see also Doe v. BlueCross BlueShield of Tenn., Inc., 926 F.3d 235, 241 (6th Cir. 2019).) The Court does not interpret Plaintiffs' claims as ones brought under a disparate impact theory. See Doe, 926 F.3d at 243 ("A claim based on a denial of a reasonable accommodation differs from a disparate-impact claim. Under the Rehabilitation Act, a disabled person is 'otherwise qualified' for a program if he could meet its requirements with a reasonable accommodation. And when that holds true, a denial of the requested accommodation may amount to unlawful discrimination."). Their Complaint expressly seeks redress from Governor

Lee's Executive Order that affects the rights of everyone in schools and allegedly prevents Plaintiffs from receiving reasonable accommodations. (See ECF No. 1 at PageID 20 ("Governor Lee's Executive Order is denying local school districts and public health authorities the ability to provide these children with the accommodations they need to attend school safely."); see also ECF No. 29 at PageID 236 ("Plaintiffs have expressly sought reasonable modification of their children's schools' policies to permit them to have access to the activities, programs, and services as guaranteed by the ADA and Rehabilitation Act").) As such, the Court will proceed to analyze Plaintiffs' claims as those seeking reasonable accommodations.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Wilson v. Gregory, 3 F.4th 844, 859 (6th Cir. 2021). Claims for reasonable accommodations are cognizable under Title II of the ADA. Roell v. Hamilton Cty., 870 F.3d 471, 488 (6th Cir. 2017). To recover on failure-to-accommodate claim, a plaintiff must establish that: "(1) he is disabled; (2) he was "qualified" to take part in the "services, programs, or activities" of the public entity; (3) he was "excluded from participation in" or "denied the benefits of" such "services, programs, or activities"; and (4) this exclusion or denial occurred "by reason of" his disability. Keller v. Chippewa Cty., Michigan Bd. of Commissioners, No. 20-2086, 2021 WL 2411873, at *4 (6th Cir. June 14, 2021) (quoting 42 U.S.C. § 12132). The "phrase 'services, programs, or activities' encompasses virtually everything that a public entity does," including, therefore, the operations of a public school. Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998).

15

Defendant Lee does not appear to contest that Plaintiffs are disabled or are qualified to take part in services, programs and activities of a public entity. However, he does argue that Plaintiffs have not identified a "state service, program or activity" from which they are excluded or denied benefits. (ECF No. 24 at Page ID 127.) Not only have Plaintiffs established that they are qualified individuals with disabilities under the ADA and Section 504, but they have also established that they are students in Germantown and Collierville public schools, and are qualified to take part in the "services, programs, or activities" of the schools, which are state services, programs or activities. (ECF No. 1 at PageID 7-8.)

Further, Plaintiffs have identified ways that they have been excluded from participating in school programs and activities, including from physical education classes, and socializing with their peers when within the school buildings and at lunch. (ECF No. 26, Brittany Schwaigert & Emily Tremel Testimony.) They have also established that Defendant Lee's opt-out policy makes Plaintiffs' schools not "readily accessible" to Plaintiffs, even to the degree that Plaintiff S.T. is quarantined at home after contracting the virus from an unmasked child who had contracted COVID-19. (ECF 2-1 at PageID 40; see also 28 C.F.R. § 35.150 ("A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.").) They have established that their exclusion is due to the threat Plaintiffs face from COVID-19 exposure because of their extreme medical vulnerabilities – in other words, due to their disabilities. As such, Plaintiffs are likely to satisfy the legal requirements for a claim under the ADA and Rehabilitation Act, and are likely to succeed on the merits of such claims, based on the record now before the Court.

## II. Irreparable Harm Shown

The factor of irreparable harm was uncontested by Defendants at this stage. Plaintiffs have satisfied their burden of showing that irreparable harm will result if the Governor's Executive Order remains in place by including in their pleadings that "school has been in session for more than 3 weeks, a significant number of the student body has already opted-out of the county-wide mask mandate, and the number of students infected with COVID-19 or exposed, warranting quarantine continues to rise," and that "[w]ithout the ability to implement a universal mask mandate, Plaintiffs will continue to be exposed to an increased risk of infection, hospitalization, or death because of COVID-19, or they will be forced to stay home and denied the benefits of an in-person public education." (ECF No. 2-1 at PageID 41.)

## III. No Substantial Harm Caused to Third Parties, and Injunctive Relief in Public Interest

The third and fourth factors were similarly unopposed by Defendants. Moreover, Plaintiffs have met their burden of establishing both factors. First, Plaintiffs provide that the relief will not cause any harm to third parties because "the public has an interest in protecting public health," see Neinast v. Bd of Trs. Of the Columbus Metro. Library, 346 F.3d 585, 594 (6th Cir. 2003), and that enforcement of the ADA is also in the public interest. Hostettler v. College of Wooster, 895 F.3d 844, 853 (6th Cir. 2008). Further, one of the Defendants in this case, Shelby County, does not oppose the issuance of a Temporary Restraining Order. (ECF No. 30 at PageID 241.)

Based on this analysis, the Motion for Temporary Restraining Order is **GRANTED**.

**IT IS THEREFORE ORDERED THAT**:

1. Defendant Governor Lee is **ENJOINED** from enforcing Executive Order No. 84 in Shelby County or allowing parents to opt out of Defendant Shelby County's mask mandate, as currently specified under Shelby County Health Order No. 25.

2. Defendant Shelby County is **ORDERED** to enforce its Health Orders without exception for Governor Lee's Executive Order No. 84.

3. This Temporary Restraining Order shall remain in effect until 4:00 p.m. on Friday, September 17, 2021, unless dissolved sooner or extended by order of this Court.

4. The Court will hold a preliminary injunction hearing in this matter on September 9, 2021, at 10:00 a.m. in Courtroom 1.

5. The Court is entering this Order to prevent further injury, damage and loss to Plaintiffs.

**IT IS SO ORDERED,** this 3rd day of September, 2021.

                                           s/ Sheryl H. Lipman
                                           SHERYL H. LIPMAN
                                           UNITED STATES DISTRICT JUDGE