UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

G.S., by and through his parents and next
friends, BRITTANY AND RYAN SCHWAIGERT;
S.T., by and through her mother and next friend,
EMILY TREMEL; J.M., by and through her mother
and next friend, KIMBERLY MORRISE; and on
behalf of those similarly situated,

    Plaintiffs,

v.                                                Case No. 2:21-cv-02552-SHL-atc

GOVERNOR BILL LEE, in his official
capacity as GOVERNOR OF TENNESSEE,
SHELBY COUNTY, TENNESSEE,

    Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR INTERIM AWARD OF ATTORNEYS' FEES AND COSTS**

**COME THE PLAINTIFFS,** G.S., et al. (hereinafter "Plaintiffs"), and hereby move this Court pursuant to 42 U.S.C. § 12205 for an interim award of attorneys' fees in this action. Verified billing records for this action and corroborative declarations establish both the hours reasonably expended and the reasonableness of the hourly rate for Plaintiffs' counsel. Specifically, Plaintiffs' counsel has incurred 334.20 hours of work, which equals $128,338.50 of attorney time. Due to the complexity, risk associated with the case, and results obtained by Plaintiffs, counsel seeks a 25% upward adjustment in fees for a total of $160,423.13. Plaintiff also seeks $2,605.90 in costs. In support, Plaintiffs state as follows:

**I.    STATUS OF LITIGATION**

Plaintiffs commenced this action on August 27, 2021, in response to Defendant Bill Lee's (hereinafter "Governor Lee") Executive Order No. 84, which permitted a voluntary opt-out of

1

masking for any child based purely upon parental choice. Plaintiffs sought injunctive relief for themselves and a class of similarly situated disabled public-school students. Specifically, Plaintiffs sought an order enjoining Governor Lee from enforcing Executive Order No. 84.

On August 30, 2021, the Court held a hearing on the Motion for a Temporary Restraining Order and issued the TRO on September 3, 2021. (Dkt. 34). On October 9, 2021, the Court held an evidentiary hearing on the Motion for Preliminary Injunction. (Dkt. 52). At the hearing, the Court considered the testimony that it had heard on August 30, 2021 of Dr. Sara Cross, Dr. Joi Wilson-Townsend, and the mothers of Plaintiffs G.S. and S.T. (Id.) The Court also heard testimony from Theresa Nicholls. Throughout this timeframe, Plaintiffs produced extensive briefing on complex issues in very little time. (Dkt. Nos. 2, 29, 56).

This Court after weighing the evidence to the factors for issuance of a preliminary injunction found **all** the factors favored Plaintiffs and issued a preliminary injunction, pending trial, enjoining Governor Lee from enforcing Executive Order No. 84, as extended by Executive Order No. 89. (Dkt. No. 62). Thereafter, Defendant sought a stay at the district court, which was denied. (Dkt. Nos. 68, 72). Defendants also appealed the Court's order. (Dkt. No. 66). Subsequently, Defendants have subsequently dismissed their appeal of the interlocutory order. (Dkt. Nos. 97, 98). Therefore, Plaintiffs have therefore achieved the status of prevailing parties in this litigation by enjoining Executive Order 84. That Order no longer exists, and the Governor has now voluntarily dropped its appeal. Accordingly, Plaintiffs' claim for attorneys' fees is ripe for adjudication.

## II.     ENTITLEMENT TO AN INTERIM AWARD

### A. Because Plaintiff is a prevailing party, an interim fee award is appropriate.

In the Sixth Circuit, an interim award of fees is appropriate where a party has prevailed on the merits of at least some of his claims. *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988).

Where, as here, a party has prevailed on an "important matter in a case," interim fees are "especially appropriate." *Id.* At the heart of an interim fee award is recognition that, "particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation would work substantial hardship on plaintiffs and their counsel and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes." *Id.* The Supreme Court explained that an interim fee award is permitted "when a party has prevailed on the merits of at least some his claims [and] only in that event has there been determination of the 'substantial rights of the parties.'" *Hanrahan v.* Hampton, 446 U.S. 754, 758 (1980). Plaintiffs readily qualify under that standard.

42 U.S.C. § 12205 provides that a District Court may award "the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." Furthermore, "the United States shall be liable for the foregoing the same as a private individual." This applies "[i]n any action or administrative proceeding commenced pursuant to" the Americans with Disabilities Act. Plaintiffs claims have been brought, in part, pursuant to the Americans with Disabilities Act.

Interim fees are routinely awarded in the context of a preliminary injunction. *See e.g.*, *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). A plaintiff is a "'prevailing party' for attorney's fees purposes if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit [he] south in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "[T]he plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792 (1989) (citing *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987)).

3

Prevailing-party status is reached even on a mixed-victory. A plaintiff who wins on any significant issue – achieving a benefit it sought in bringing suit – but loses on other issues is still a prevailing party. *Texas State Teachers Ass'n¸* 489 U.S. at 791-92. Plaintiffs are undoubtedly prevailing parties as Executive Order No. 84 and 89 have been enjoined and now have been withdrawn by the Governor. Plaintiffs have accomplished the relief they sought in bringing this action.

## III.   CALCULATING THE PROPER FEE AWARD

Section 504 and the ADA provide for the payment of a prevailing plaintiffs' attorneys' fees and litigation expenses. 29 U.S.C. § 794a(b); 42 U.S.C. § 12205; 42 U.S.C. § 1988(b); 28 C.F.R. § 35.175.

The Supreme Court holds that the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard v. Bergeron,* 489 U.S. 87, 89 (1989). In fact, the Court has stressed the importance of awarding attorneys' fees to prevailing parties in civil rights cases in particular, in order to encourage attorneys to act as "private attorneys-general," vindicating the most basic constitutional and congressional policies against discrimination. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). All taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. *See Newman,* 390 U.S. at 402; *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ."); *Rivera*, 477 U.S. at 574 (fees in civil rights cases need not be proportionate to a monetary recovery).

### A. The lodestar calculation should be the starting point.

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonably hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F. 3d 531, 551 (6th Cir. 2008). *Accord Hensley*, 461 U.S. at 433. "Where the party seeking the attorney fee has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 564 (1986).

### B. The hours expended by Plaintiffs' counsel are more than reasonable.

This case was difficult to litigate. Plaintiffs' counsel has set aside a significant portion of their practice as it pertains to individual clients to litigate the issues before the Court. The theories pursued by Plaintiffs were largely undeveloped before this litigation and Plaintiffs achieved the first injunctive relief in the nation as it pertained to state overreach into right protected by federal law—namely the ADA and the Section 504. From approximately one week before filing until the hearing on September 9, 2021, Plaintiffs' counsel worked unceasingly to interview and prepare plaintiffs as well as to identify, prepare, and present expert testimony. In those same two weeks, Plaintiffs' counsel prepared hundreds of pages of written pleadings, pre- and post-hearing briefs, and procedural filings. To accomplish all of this work, the 334.2 hours of collective time billed by Plaintiffs' counsel was imminently reasonable. Specifically, counsel worked the following hours:

Bryce Ashby: 138.1 hours

Brice Timmons: 104.2 hours

Craig Edgington: 66.9 hours

Robert Donati: 25 hours

**C. Plaintiffs' counsel's hourly rates are reasonable.**

Brice Timmons (hereinafter "Mr. Timmons") of Donati Law, PLLC has been licensed to practice law since 2010, and is an active member of the American Bar Association, Federal Bar Association, Tennessee Bar Association, and Memphis Bar Associations. Mr. Timmons is in good standing with the Tennessee Bar. Mr. Timmons is admitted to the Western District of Tennessee, the Middle District of Tennessee, the Sixth Circuit, and all courts of the State of Tennessee. The largest segment of Mr. Timmons' practice is devoted to litigating cases under 42 U.S.C. Section 1983. Over 90% of his practice is devoted to federal civil rights litigation arising under 42 U.S.C. Section 1983, the Americans with Disabilities Act, the Rehabilitation Act of 1973, Title IX of the Civil Rights Act, and occasionally under other federal civil rights statutes. At present, Mr. Timmons is lead counsel or co-lead counsel in five (5) class action or putative class action lawsuits, all brought under various federal civil rights statutes. For approximately six (6) years, Mr. Timmons held an academic appointment through the University of Memphis where he taught courses in civil rights and constitutional law. Mr. Timmons is one of only a handful of lawyers in Shelby County, Tennessee who routinely litigates complex federal civil rights litigation arising outside the employment context. Mr. Timmons has served as co-lead counsel in three separate class claims under the ADA/Section 504 against the Governor of Tennessee. *See G.S. et al. v. Gov. Bill Lee*, Case No. 21-cv-2552-SHL-atc (W.D. Tenn.); *R.K. et al. v. Gov. Bill Lee*, Case No. 3:21-cv-725 (M.D. Tenn.); *R.K. et al. v. Gov. Bill Lee et al.*, Case No. 3:21-cv-853 (M.D. Tenn.). For this matter, Mr. Timmons is billing at a rate of $420 per hour, which is the same amount he was awarded by Judge Mays in *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877 (W.D. Tenn. Dec. 9, 2021).

Bryce Ashby (hereinafter "Mr. Ashby") of Donati Law, PLLC, has been licensed to practice law since 2007 and is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. He has served as president of the Tennessee Employment Lawyers Association and the Memphis/Mid-South Chapter of the Federal Bar Association as well as Chair of the Western District of Tennessee's Local Rules Committee. His practice focuses on employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, Americans with Disabilities Act, the Rehabilitation Act. Mr. Ashby is counsel on two putative class actions arising out of violations of the Trafficking Victims Protection Act and has handled multiple collective actions under the Fair Labor Standards Act as lead counsel. Mr. Ashby has served as co-lead counsel in three separate class claims under the ADA/Section 504 against the Governor of Tennessee. *See G.S. et al. v. Gov. Bill Lee*, Case No. 21-cv-2552-SHL-atc (W.D. Tenn.); *R.K. et al. v. Gov. Bill Lee*, Case No. 3:21-cv-725 (M.D. Tenn.); *R.K. et al. v. Gov. Bill Lee et al.*, Case No. 3:21-cv-853 (M.D. Tenn.). In this matter, Mr. Ashby is billing at $420 per hour due to the complexity of the matter and due to the fact that representation of Plaintiffs in this matter required him to both set aside cases he was working on and forgo potential new clients. In 2019, Mr. Ashby was awarded $325/hr in a single plaintiff employment matter in front of Judge McCalla. He typically bills between $350-375 in his individual employment cases.

Craig A. Edgington (hereinafter "Mr. Edgington") of Donati Law, PLLC, has been licensed to practice law since 2020 and is a distinguished member of the Tennessee Bar and the Federal bar. Like Mr. Timmons, his practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational

7

institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Edgington also has experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Edgington is also counsel in each of the civil rights or class actions identified by Mr. Timmons. Mr. Edgington has served as co-lead counsel in three separate class claims under the ADA/Section 504 against the Governor of Tennessee. *See G.S. et al. v. Gov. Bill Lee*, Case No. 21-cv-2552-SHL-atc (W.D. Tenn.); *R.K. et al. v. Gov. Bill Lee*, Case No. 3:21-cv-725 (M.D. Tenn.); *R.K. et al. v. Gov. Bill Lee et al.*, Case No. 3:21-cv-853 (M.D. Tenn.). For this matter, Mr. Edgington is billing at a rate of $275 per hour, which is the same amount he was awarded by Judge Mays in *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877 (W.D. Tenn. Dec. 9, 2021).

Robert Donati (hereinafter "Mr. Donati") of Donati Law, PLLC has been licensed to practice since 2006 and is a distinguished member of the Tennessee Bar and the Federal Bar. Mr. Donati's practice focuses almost exclusively on representing individuals with disabilities and their families in both litigation and social security proceedings. Mr. Donati has a deep knowledge of medical conditions and health law. For this matter, Mr. Donati is billing a rate of $325/hour.

Declarations as to the reasonableness of these rates and the time incurred in litigation of this matter have been submitted as Exhibits to this Motion. *See* Declaration of Andrew Clarke; Declaration of Michael McLaren.

### D. An upward adjustment from Plaintiffs' counsel's lodestar is appropriate here.

Once the lodestar figure is established, the court may consider additional factors and adjust the award in its discretion. *Hensley*, 461 U.S. at 434. In determining whether an upward adjustment is justified, the Supreme Court has approvingly cited twelve non-exhaustive factors: (1) the time

8

and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

In *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004), the Sixth Circuit discussed the Supreme Court cases analyzing the application of the *Johnson* factors. The *Geier* court noted that "factors such as 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably full reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Geier*, 372 F.3d at 795 (citations omitted.) Nonetheless, the *Geier* court noted the Supreme Court's statement that upward adjustments of the lodestar are still permissible. *Id.*

Plaintiffs respectfully suggests that an upward adjustment of 25% in this case is appropriate. Plaintiffs content that an upward adjustment is appropriate here for a number of other reasons.

First, as *Johnson* recognized, it is appropriate for courts to consider the contingency risk. Plaintiffs' counsel's hourly rates, reflected in the lodestar number, are slightly higher than the hourly rates that they charge for paying clients, where invoices are sent on a regular basis and prompt payment is essentially certain, win or lose. One factor, therefore, supporting an upward adjusting here is the contingency risk assumed by Plaintiffs' counsel. *Freudeman v. Landing of Canton¸* 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) ("Plaintiff's counsel argues

that the attorney fee should be adjusted upwards in recognition of the contingent fee aspect of the contract between the plaintiff and plaintiff's counsel. The Court finds increasing the attorney fee award based upon the lodestar calculation to the amount of the contingency fee represented by the contract between the plaintiff and plaintiff's counsel merits consideration. However, the Court concludes that an upward adjustment of the lodestar calculation increased by 25% is the appropriate adjustment after considering the factors[.]"). Here, Plaintiffs' counsel did not charge an hourly rate to their clients and did not have the likelihood of economic or compensatory damages from which to charge a contingency fee. Instead, Plaintiffs' counsel sole potential to earn compensation in this matter was based on it achieving success in the litigation and being awarded fees by the Court. This is significant risk for Plaintiffs' counsel as this matter required full attention from counsel for a number of weeks.

Second, Plaintiffs' counsel was at a significant resource disadvantage relative to defense counsel. Plaintiffs were represented by small firm practitioners *See Berotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (awarding upward fee adjustment, in part, because Plaintiff's counsel's performance was impressive based on the size of his firm). Defendants have at all times been represented by the Tennessee Attorney General's office with the full and vast resources of the State of Tennessee at their disposal.

Third, tackling this case has precluded other representations by Plaintiffs' counselors due to their commitment to this case. The amount of attorney time demanded by this case presumptively precluded Plaintiffs' counselors from taking on other matters. *Freudeman*, 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) ("Such a time-intensive case by necessity precluded the acceptance of some other work by plaintiff's counsel.")

10

Fourth, though this lawsuit was necessary to redress the deprivation of Plaintiffs' rights, at the commencement of this case, the case was relatively "undesirable." No other law firm or non-profit legal organization had been successful in overcoming a state issued mask mandate in a public school.

Finally, by any reasonable measure, Plaintiffs' counsel obtained an outstanding result for their client. Here, Plaintiffs, and the class of plaintiffs they represent, are medically vulnerable children that risk contracting a potentially life-threatening virus. Plaintiffs counsel achieved injunctive relief that has the potential to save Plaintiffs or other members of the class's life. Indeed, within two weeks of the Court's TRO, suburban districts saw a decline in COVID-19 case numbers.[1] Plaintiffs' counsel were the first attorneys in the United States to achieve a preliminary injunction of this nature and their work has served as the foundation of each similar case that is currently being pursued nationwide.

## IV. **AMOUNT SOUGHT**

Plaintiffs' counsel has invested 334.20 hours into this case, which is $128,338.50 in attorney time. Plaintiffs' counsel seeks a lodestar amount of $160,423.13, which is an upward adjustment of 25%. For the Court's convenience, Plaintiff provides the following chart, which may assist the Court should it decide in its discretion to use a different (or no) upward adjustment.

In addition, to date, Plaintiffs' counsel advanced costs which total $2,605.90 (Exhibit to Mr. Ashby's Declaration.) Plaintiff therefore asks for a total interim award of $163,029.03, reflecting $160,423.13 in fees and $2,605.90 in expenses.

---

[1] https://dailymemphian.com/article/24153/masks-and-covid-in-schools-germantown-gmsd

11

## V. CONCLUSION

Plaintiffs are prevailing parties in this litigation, and therefore are entitled an award of reasonable attorneys' fees pursuant to § 12205. An interim fee award is appropriate here, and Plaintiffs respectfully request that this Court issue an order awarding interim fees and costs as requested by Plaintiffs, without prejudice to Plaintiffs' ability to move for a further award of fees at a later date as the case continues through the trial process.

Respectfully Submitted,

**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Craig A. Edgington—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
bryce@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I certify that this Motion was served upon counsel of record for the Defendants, through the Court's ECF filing system on December 23, 2021.

/s/Bryce W. Ashby

12