IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| G.S., by and through his parents and next friends, BRITTANY AND RYAN SCHWAIGERT; S.T., by and through her mother and next friend, EMILY TREMEL; J.M., by and through her mother and next friend, KIMBERLY MORRISE; and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GOVERNOR BILL LEE, in his official capacity as GOVERNOR OF TENNESSEE,<br><br>    Defendant. | No. 2:21-cv-02552-SHL-atc |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Near the start of the 2020-2021 academic school year, the parents and next friends of two children[1] – on behalf of themselves and all other school-age children in Shelby County whose disabilities place them at increased risk of severe illness from COVID-19 – filed suit in this Court. They alleged that Governor Bill Lee's ("Defendant" or "Governor Lee") Executive Order No. 84 ("EO 84"),[2] which allowed parents to opt their children out of a county-wide mask mandate, violated their rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132 et. seq., and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a). (ECF No. 1.) Finding that EO 84 was likely to violate both statutes and to subject Plaintiffs to a

---

[1] Plaintiffs' Amended Complaint, (ECF No. 54), later added J.M., by and through her mother and next friend, Kimberly Morrise, as a party.
[2] The Court dismissed Defendant Shelby County, Tennessee from the case on March 4, 2022. (ECF Nos. 121 & 123.) Thus, this Order only discusses allegations against Governor Lee.

heightened risk of contracting the disease, the Court enjoined its enforcement in Shelby County. (ECF No. 62, Order Granting Plaintiffs' Motion for Preliminary Injunction ("Preliminary Injunction").) The Court's Preliminary Injunction covered subsequent, but substantively identical, iterations of the original EO 84.[3] Now, near the end of the school year, after months of litigation, changes to state law, and with a declining number of COVID-19 infections across the country, Governor Lee argues that Plaintiffs' lawsuit is moot. Having considered the Parties' arguments, the factual circumstances, and the applicable law, the Court agrees.

Before the Court are Governor Lee's Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 108), Plaintiffs' Response, (ECF No. 112), and Governor Lee's Reply. (ECF No. 117.) In his Motion, Governor Lee argues that (1) the passage of new legislation governing the use of masking in schools, (2) the expiration of the state of emergency underlying EO 84, and (3) his termination of EO 84 through the passage of Executive Order No. 92 ("EO 92") all render this litigation moot, as he can no longer provide the relief that Plaintiffs seek. In response, Plaintiffs argue that the case is not moot because Governor Lee remains capable of issuing another Executive Order by declaring a new state of emergency, and therefore the injunction is needed to keep that imminent threat at bay.[4] However, due to changed circumstances facing schools right now – a reduced threat of harm from COVID-19 due to the presence of vaccines, more advanced medicine, and a lower caseload – coupled with the new legislation and the lack of a state-imposed state of emergency, the Court finds that the relief

---

[3] Governor Lee extended the applicability of EO 84 through issuing Executive Order No. 89 on September 30, 2021. (ECF No. 69.) Given the Executive Orders' similar substance, the Court's Orders applied to previous and future Executive Orders seeking to provide the same "opt-out" provision. (see ECF No. 72, Order Denying Motion to Stay, at PageID 1375-76 at n.1.)

[4] Plaintiffs also argue that, if the Court does find the lawsuit moot, a finding of mootness after the issuance of a preliminary injunction affords them their reasonable attorneys' fees. (ECF No. 112 at PageID 1693.) The Court will address the issue of attorneys' fees in a separate order.

2

sought by Plaintiffs is no longer available from Governor Lee and that there is no expectation that he would reinstate a similar Executive Order in the future. Thus, the Court **GRANTS** the Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## BACKGROUND

Evading the threat of COVID-19 is a moving target. That target remains elusive as new variants, including the Delta variant in Fall 2021 and the Omicron variant this winter, are discovered and quickly proliferate. Amidst great tragedy, precarity, and illness, schools have had to determine when to cease in-person classes at the expense of education, and when to risk in-person classes at the expense of heightened health risk. States, school districts, and schools have attempted to address the issue with a myriad of approaches and levels of success.

The cause for this litigation began on August 16, 2021, when Governor Lee issued EO 84, providing parents or guardians of children in Tennessee the right to opt their children out of wearing masks in schools – despite any other masking requirement imposed by schools, school systems, or local health departments to mitigate the spread of COVID-19. (See ECF No. 62.) Plaintiffs filed suit on August 27, 2021, and, one week later, following a hearing and briefing by the Parties, the Court issued a Temporary Restraining Order to enjoin enforcement of EO 84 so that Plaintiffs could continue to access their schools without facing increased risk of COVID-19 infections, as required by the ADA and Section 504. (ECF No. 34.)

Two weeks later, following a second hearing and further briefing, the Court issued a preliminary injunction to enjoin Governor Lee from enforcing the Executive Order in Shelby County. (ECF No. 62.) At the time, the Delta variant was surging throughout this jurisdiction. Shelby County had nearly 1,300 new cases of COVID-19 daily, and 34% of the county's total infections were pediatric cases. (ECF No. 62 at PageID 1243 (citing ECF No. 53 at PageID

1149).)  Making matters worse, children below the age of 12 years old were generally ineligible for the vaccine at that time.  (Id.)  The result of this public health crisis was a recommendation by the Centers for Disease Control and Prevention ("CDC") and American Academy of Pediatrics of "universal indoor masking" within schools to protect children from exposure to COVID-19 and to limit the spread of the virus by the mask-wearer.  (Id. at PageID 1244-45.)

In its Preliminary Injunction, the Court found that the Shelby County Health Department had already (1) determined that requiring masks in schools was a reasonable accommodation and (2) illustrated its feasibility by implementing this accommodation without issue before EO 84's existence.  (ECF No. 62 at PageID 1251-52.)  Thus, the Court concluded that Plaintiffs' claims under the ADA and Section 504 were likely to succeed on the merits because EO 84 prohibited this accommodation from being available to schools, school systems and the Shelby County Health Department.  The Court also found that irreparable harm would result without injunctive relief, and that enjoining EO 84 was both in the public interest and would not harm the Governor.  (Id.)

On September 27, 2021, Governor Lee gave notice of his appeal to the United States Court of Appeals for the Sixth Circuit from this Court's Preliminary Injunction.  (ECF No. 66.)  Governor Lee moved to stay injunctive relief pending the Sixth Circuit's decision, (ECF No. 68), which the Court denied.  (ECF No. 72.)  Governor Lee then sought a stay of the preliminary injunction in the Sixth Circuit.  See G.S. v. Lee, No. 21-5915 (6th Cir.), ECF No. 12-1.  When declining to stay the injunction, the Sixth Circuit noted that events occurring after its issuance "raise[d] questions about whether this case is moot," and suggested that those questions should be addressed by this Court "in the first instance."  (See id. at ECF No. 18-2.)

While the appeal was pending in the Sixth Circuit,[5] the Tennessee legislature passed the COVID Act, Tenn. Code Ann. §§ 14-1-101--14-6-104 ("COVID Act"). The COVID Act prohibits masking requirements absent a protracted bureaucratic approval process.[6] The legislation also allows a school to provide masking as a reasonable accommodation under the ADA for an individual who provides a written request – but the legislation notably lacks the provision of a reasonable accommodation of a school-wide policy. Finally, a school could not use state funds to mandate or require face masks.

Governor Lee signed the COVID Act into law. Governor Lee faced no obligation to take this action: the legislation could have been vetoed, or passed without his signature. See R.K. ex rel. J.K. v. Lee, No. 3:21-cv-853, 2021 WL 5860924, at *18 (M.D. Tenn. Dec. 10, 2021) (Crenshaw, C.J.) (citing Webb v. Carter, 129 Tenn. 182, 165 S.W. 426, 449 (1914)). Instead, he authorized the COVID Act with his signature, and subsequently terminated EO 84 and its later iterations by issuing EO 92, explaining that the new legislation now "negates the need for" his previous Executive Orders. (ECF No. 112-1.) Thus, in the words of Chief Judge Waverly Crenshaw, Governor Lee was "apparently satisfied that Title 14 achieved what he intended" with the underlying Executive Orders. See R.K., 2021 WL 5860924, at *18. The legislation also stripped school districts of any power to require masks unless the Governor first declares a state of emergency, providing the Governor with authority to control future COVID-19 outbreaks. Thus, while the EO 84 provided parents with the power to choose whether to follow a school-

---

[5] On December 10, 2021, upon consideration of the Parties' motion to voluntarily dismiss their appeals, the Clerk of the Sixth Circuit dismissed the appeals. (ECF No. 98.)

[6] That process required: the existence of a "severe condition"; written request by a principal, school board president, or governing body to adopt a mask policy; adoption of that policy on a "school-by-school" or "campus-by-campus" basis; the provision of masks by the school for children ages 5 and above; and a 14-day limit for the policy, unless renewed for an additional 14 days, if all previous requirements still exist. Tenn. Code Ann. § 14-2-104.

district mask mandate, under the legislation "the Governor alone controls whether a school district can use masking to protect children." See id. at *23. The original state of emergency declared by Governor Lee in March 2020 expired on November 19, 2021. It was not renewed.

On January 18, 2022, Governor Lee filed this Motion, and Plaintiffs responded on January 20, 2022. (ECF Nos. 108 & 112.) Governor Lee filed his Reply on February 2, 2022. (ECF No. 117.) As this Order is issued, Shelby County faces a lower threat of COVID-19 infection than it did previously during this litigation, as the number of cases in this jurisdiction has decreased substantially.[7] However, the heightened risk for vulnerable community members like Plaintiffs remains with any remaining risk of community spread. As of March 23, 2022, Shelby County had a daily average of only twenty-one (21) cases, with seven (7) new cases per day – a precipitous 67% decline from the average caseload two weeks ago.[8] And about 59% of people in Shelby County above the age of five are fully vaccinated.[9] Yet masking as a protective measure is still critical. Indeed, the American Academy of Pediatrics reminds that "[f]or some children – including those too young to be immunized and many with special health care needs – masking will still be an important layer of protection for a while longer[.]"[10]

---

[7] "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003) (citing Rogers v. Stratton Industries, 798 F.2d 913, 916 (6th Cir. 1986)).
[8] Tracking Coronavirus in Shelby County, Tenn.: Latest Map and Case Count, N.Y. Times (March 23, 2022) (last updated March 23, 2022), available at https://www.nytimes.com/interactive/2021/us/shelby-tennessee-covid-cases.html.
[9] Id.
[10] American Academy of Pediatrics Offers New Masking Recommendations for Families Following Updated CDC Guidance, American Academy of Pediatrics, (March 1, 2022), available at https://www.aap.org/en/news-room/news-releases/aap/2022/american-academy-of-pediatrics-offers-new-masking-recommendations-for-families-following-updated-cdc-guidance/

**LEGAL STANDARD**

Federal courts have power under the Constitution to adjudicate only "Cases" and "Controversies." Already, LLC v. Nike, Inc., 568 U.S. 85 (2013). A mootness challenge is properly addressed as a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Those subject-matter jurisdiction challenges are of two varieties: (1) a facial attack, challenging jurisdiction based solely on the pleadings; or (2) a factual attack, challenging the factual basis for jurisdiction. Wayside Church v. Van Buren County, 847 F.3d 812, 816 (6th Cir. 2017). Governor Lee's attack here is a factual one.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Id. at 726–27 (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). "Mootness is a high hurdle. The government must show that a court could order no 'effectual relief whatever' for the plaintiffs' injury." Vitolo v. Guzman, 999 F.3d 353, 359 (6th Cir. 2021) (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)). The movant bears the "heavy burden" of demonstrating mootness. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc., 528 U.S. 167, 189 (2000.)

Although an issue is often no longer considered live when the offending conduct at issue stops, there are two relevant circumstances in which the issue is not moot. First, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." Mokdad v. Sessions, 876 F.3d 167, 171 (6th Cir. 2017) (called the "voluntary cessation" doctrine). Second, an act that is "capable of repetition, but evading review," will not be found to be moot. Libertarian Party of Ohio, 462 F.3d at 584 (called the "capable of repetition" exception).

## ANALYSIS

The Parties agree that the COVID Act replaced and rendered null EO 84 and its later replacements.[11] (ECF No. 112 at PageID 1690; ECF No. 117 at PageID 1719.) On its face, that means that the sole relief requested in this case – an injunction preventing the enforcement of that Order – is no longer available. Thus, while mootness by its traditional test is met, the Parties disagree as to whether an exception to the mootness doctrine exists. Plaintiffs call upon both (1) the voluntary cessation and (2) the "capable of repetition, yet evading review" exceptions to argue that the case is not moot, whereas Governor Lee argues that neither exception applies. Considering the law and circumstances relevant to both exceptions, the Court finds that neither applies.

### I. Voluntary Cessation

A defendant voluntarily ceasing its unlawful conduct does not generally moot a case. Speech First, Inc. v. Schlissel, 939 F.3d 756, 767 (6th Cir. 2019). "Voluntary cessation will only moot a case where there is 'no reasonable expectation that the alleged violation will recur,' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Id. (quoting Los Angeles Cty v. Davis, 440 U.S. 625, 631 (1979) (cleaned up)). The burden to establish mootness is "lower," however, when the government has voluntarily ceased its unlawful conduct. Thomas v. City of Memphis, Tennessee, 996 F.3d 318, 324 (6th Cir. 2021). In particular, "where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine." Id.; see also id. at 328 ("our primary concern is not the mere possibility that the government could revert to a

---

[11] See ECF No. 72, Order Denying Motion to Stay, at PageID 1375-76 at n.1.

challenged practice but whether there is evidence that the government will 'flip-flop' or has altered its conduct solely in response to litigation.") (emphasis added).

Plaintiffs argue that there is no presumption of mootness because Governor Lee's termination of EO 84 was not genuine. According to Plaintiffs, the language of EO 92 – stating that the passage of the COVID Act "negates the need for [EO 84], as amended," (see ECF No. 112) – indicates that additional executive action might occur in the absence of the legislation. Thus, with the COVID Act enjoined since December 2021, see R.K., 2021 WL 5860924, Plaintiffs argue that, with the need for EO 84 no longer negated, they face the continued threat of imminent action by the Governor. Further, they argue that his past actions in litigating and defending EO 84 and other similar Executive Orders "aggressively on appeal . . . [and] continually maintain[ing] that he has the legal authority to issue the Executive Order" reduce the Court's ability to find that he will "not continue his pattern of disregarding the clear implications from the orders from this Court as well as the Middle and Eastern Districts of Tennessee" by issuing new Executive Orders. (ECF No. 112 at PageID 1693; see R.K., 2021 WL 5860924; see also Amended Memorandum Opinion and Order, S.B. et al., v. Lee et al., 3:21-cv-00317-JRG-dcp (E.D.T.N. Oct. 12, 2021).)

In response, Governor Lee argues that he terminated EO 84 after legitimate legislation was passed, not in response to litigation. He also contends that he has shown no intention of "flip-flopping" his termination of the Executive Order as he has taken no such action since Chief Judge Crenshaw enjoined the legislation. (ECF No. 117 at PageID 1721.) Moreover, despite the increase in COVID-19 cases this winter due to the Omicron variant, Governor Lee emphasizes that he has not taken the most foundational step to ensuring that he could enact another

9

Executive Order similar to EO 84: declaring another state of emergency. (Id. at PageID 1722.) Thus, he avers that the presumption of mootness should apply.

Based on the language of Governor Lee's EO 92, it is not clear that he terminated EO 84 in order to refrain from his unlawful conduct. To the contrary, by stating that the COVID Act negated the need for his own orders, it seems that Governor Lee could be inclined to renew his own Executive Order now that the legislation is enjoined. Thus, the Court cannot presume mootness. However, after analyzing the Governor's actions and the potential of a continuing threat to Plaintiffs, the Court finds that Governor Lee met his burden in demonstrating that the challenged conduct will not recur.

Even without a presumption of mootness applied to his actions, Governor Lee argues that the case is still moot because the voluntary cessation doctrine is inapplicable; Plaintiffs argue that the exception applies. Both Parties analogize their circumstances to other instances of gubernatorial action to address the threat of COVID-19. Plaintiffs argue that they face a similarly "constant threat" of renewed orders similar to what was faced by plaintiffs in Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L.Ed 2d 206 (2020), and Tandon v. Newsom, 141 S. Ct. 1294, 209 L.Ed 2d 335 (2021). They also contend that, absent a public statement confirming that Governor Lee would not reissue the order, it could not be "absolutely clear" that he would not do so. See Pleasant View Baptist Church v. Beshear, 838 F.App'x 936 (6th Cir. 2020) (where Kentucky Governor publicly stated he would not reissue a challenged order and the court found the challenge moot). In opposition, Governor Lee distinguishes the above cases and argues that Plaintiffs here "show no such threat" that he would again subject them to unlawful restrictions, especially because Governor Lee has not (1) declared a new state

of emergency despite an increase in COVID-19 cases or (2) acted in the wake of the enjoined COVID Act.  (ECF No. 117 at PageID 1722.)

In Roman Catholic Diocese of Brooklyn v. Cuomo, a church and synagogue alleged that former New York Governor Cuomo's emergency Executive Order imposing occupancy restrictions on places of worship due to a risk of COVID-19 infection violated the Free Exercise clause, and the Supreme Court agreed and granted injunctive relief.  141 S. Ct. at 63.  Holding that the matter was not moot although Governor Cuomo effectively lifted the restrictions at issue by reclassifying the geographic areas in which the religious institutions were located, the Court found that they "remain[ed] under a constant threat" of the reimposition of those restrictions because the Governor regularly reclassified particular areas without prior notice.  Id.  Thus, the Court found "no reason why [plaintiffs] should bear the risk of suffering further irreparable harm in the event of another reclassification." Id. at 68-69.

The Supreme Court relied on Roman Catholic when deciding Tandon v. Newsom, 141 S. Ct. at 1294.  There, although California officials changed the challenged policy that restricted private gatherings during COVID-19 shortly after the lawsuit was filed, the Court found that (1) previous restrictions still remained and (2) the officials at issue, "with a track record of 'moving the goalposts[,]' retain[ed] authority to reinstate those heightened restrictions at any time." Id. at 1297 (citing S. Bay United Pentecostal Church v. Newsom, 141 S. Ct. 716, 720 (2020).  Thus, the remaining threat of heightened restrictions against the plaintiffs again prevented mootness. Id.

Finally, in Pleasant View Baptist Church v. Beshear, 838 F.App'x 936 (6th Cir. 2020), an Executive Order preventing certain social gatherings due to COVID-19 expired and the Commonwealth of Kentucky "replaced it with a voluntary recommendation to avoid large social

gatherings. . . ." Id. at 938. The Sixth Circuit found a challenge to the earlier Executive Order moot because "nothing in the record," including the Kentucky Governor's public statement that he would not issue a new order, "suggests that it is 'absolutely clear' that the Governor will reinstate the order or will otherwise subject the plaintiffs to prosecution." Id. at 939.

Considering the specific circumstances here, the Court finds that the voluntary cessation doctrine does not apply. There is no reasonable expectation that another Executive Order involving an opt-out masking provision will recur, and the combination of the COVID Act, the lack of a declared state of emergency in Tennessee, and EO 92 have eradicated, completely and irrevocably, the presence and effect of the opt-out mask provision in schools. Even though the Governor has not made a public avowal against reinstatement, as was present in Pleasant View, the record is clear that, without a state of emergency in place, he lacks the ability to authorize a similar measure to EO 84 (executed while Tennessee was in a state of emergency due to COVID-19). In addition, while Governor Lee has a track record of opposing previous injunctions preventing his mask-related Executive Orders, he has not taken any steps in the wake of the injunction staying the implementation of the COVID Act that would indicate that he "will reinstate the order or will otherwise subject the plaintiffs to prosecution." See Pleasant View, 838 F.App'x at 939. Thus, his previous "moving [of] the goalposts" on masking has not evidenced itself as a concern with respect to this new state legislation. See Tandon, 141 S. Ct. at 1297. Thus, the voluntary cessation exception to mootness does not apply here.

**II. Capable of Repetition**

Using much of the same argument and case law previously cited, Plaintiffs also argue that the "capable of repetition" exception applies because Governor Lee is capable of issuing another Executive Order that would pose a threat to Plaintiffs by declaring a new state of

emergency – and has not expressly stated that he would not do such a thing.  (ECF No. 112 at PageID 1692.)  In opposition, Governor Lee argues that, first, "executive orders are not inherently too short in duration to be litigated," as evidenced by the instant case.  (See ECF No. 117 at PageID 1723 (citing Cameron v. Beshear, No. 3:20-CV-00023-GFVT, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020).).  Second, he argues that Plaintiffs are merely speculating – not reasonably expecting – that Governor Lee could both declare a new state of emergency and subsequently reenact an executive order similar to EO 84.  (ECF No. 117 at PageID 1724.)

The "capable of repetition" exception applies "when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiation and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur."  Libertarian Party of Ohio, 462 F.3d at 584.  The movant is responsible for proving both elements.  Thompson v. DeWine, 7 F.4th 521, 525 (6th Cir. 2021).  If a challenged action is based on a "unique factual situation," however, then it is not capable of repetition.  Memphis A. Philip Randolph Ins. v. Hargett, 2 F.4th 458, 557-58 (6th Cir. 2021).

Neither prong of the "capable of repetition" exception is satisfied here.  First, this matter demonstrates that Executive Orders can be litigated.  While EO 84 itself was only active from August 16, 2021 to September 30, 2021, the Court enjoined all similar Executive Orders with similar substance.  (See ECF No. 72 at PageID 1375-76, n.1.)  Thus, the challenged action itself, the imposition of the opt-out provision, was in fact able to be litigated.  Second, the Court cannot find a demonstrated probability that the controversy of an opt-out provision to masking will recur in the form of another Executive Order, given the existence of the enjoined COVID Act, the

13

Governor's inaction even despite this injunction, and the lack of a state of emergency. Thus, this exception does not apply either.

## CONCLUSION

The ongoing COVID-19 pandemic manifests no signs of disappearing as a threat for vulnerable children like Plaintiffs. However, the factual conflict at the center of this litigation – how the Governor's Executive Order allows parents to opt their children out of wearing masks in school, despite other masking requirements in place – is rendered moot due to superseding state legislation and the lack of Governor Lee's present ability to implement a similar executive order to EO 84. Finding that neither exception to mootness raised by Plaintiffs applies, the Court **GRANTS** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction based on mootness.[12]

**IT IS SO ORDERED**, this 28th day of March, 2022.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

---

[12] As a result of this Order, the Court **DENIES AS MOOT** Plaintiffs' Motion to Certify Class (ECF No. 16), non-party Peggy June Griffin's Pro Se Motion to Intervene and Complaint and Request to Discontinue Suit, (ECF No. 63), non-party Mack and Alyson Riggs' Motion to Intervene and Motion for Leave to file Reply, (ECF Nos. 78 & 91), and Plaintiffs' Motion for Summary Judgment. (ECF No. 122.)