IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| G.S., et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )   No. 2:21-cv-02552-SHL-atc |
| GOVERNOR BILL LEE, in his official capacity as GOVERNOR OF TENNESSEE, and SHELBY COUNTY, TENNESSEE, | ) ) ) ) |
|     Defendants. | ) |

**ORDER GRANTING IN PART PLAINTIFFS' RENEWED MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, AND DIRECTING PLAINTIFFS TO CONFIRM HOURS WORKED AND AWARD REQUEST**

    This case, lodged against Governor Lee by the parents and next friends of disabled school-age children in Shelby County who face an increased risk of illness from COVID-19, is now moot. However, two issues remain: whether Governor Lee owes Plaintiffs attorneys' fees and costs, and, if so, how much.

    Before the Court are Plaintiffs' Motion for Interim Award of Attorney's Fees and Costs ("Motion for Interim Award"), (ECF No. 101), Defendant Governor Bill Lee's Response,[1] (ECF No. 107), Plaintiffs' Reply, (ECF No. 111), and Plaintiffs' Notice of Renewal of Motion and Memorandum for Attorneys' Fees and Costs and of Supplemental Authority for Same ("Renewed Motion"). (ECF No. 128.) The Court first notes that, because the case is moot, so, too, is Plaintiffs' request for interim fees. The issue before the Court is whether to award attorney's fees following the conclusion of the case, as requested by Plaintiffs' Renewed Motion.

---

[1] The Court dismissed Defendant Shelby County, Tennessee from the case on March 4, 2022, therefore dismissing all of Plaintiffs' claims against them with prejudice. (ECF Nos. 121 & 123.) Thus, this Order only discusses allegations against Governor Lee.

In their motion, Plaintiffs argue that they should be considered the prevailing party in this matter, entitling them to attorneys' fees totaling $160,423.13, and costs totaling $2,605.90. Governor Lee, in response, argues that Plaintiffs are not prevailing parties, their request for fees does not satisfy the lodestar standard, and their billing records fail to meet standard billing practices.

Based on the analysis below, the Court finds that Plaintiffs prevailed here. Turning to the amount of fees and costs requested, however, the Court cannot calculate that final amount without confirming whether Plaintiffs seek the same fees and costs as they did in their Motion for Interim Award. Thus, the Court **DIRECTS** Plaintiffs to confirm their final requested fee amount **within ten (10) days** of the date of this Order.

## BACKGROUND

At the start of the 2021-22 academic year, Tennessee was amidst a heightened period of infection within the COVID-19 epidemic. In early August, the Shelby County Health Department issued a masking policy, requiring all individuals in schools to wear a mask indoors. (See ECF No. 54 at PageID 1173, Amended Health Order No. 24 (requiring "universal indoor masking for all teachers, staff, students, and visitors to the schools, regardless of vaccination status.").) The Health Department followed the recommendations of the Centers for Disease Control and Prevention, American Academy of Pediatrics, and LeBonheur Children's Hospital in issuing its Order, requiring universal masking in schools for protection against COVID-19 exposure for children, who were, at the time, unable to be vaccinated. (Id.)

On August 16, 2021, Governor Lee issued Executive Order No. 84 ("EO 84"), providing parents or guardians of children in Tennessee the right to opt their children out of wearing masks in schools. (See ECF No. 62.) On August 27, 2021, Plaintiffs filed their Complaint, seeking,

inter alia, declaratory and injunctive relief against Governor Lee and Shelby County due to their alleged violations of Plaintiffs' rights under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") as a result of EO 84. (ECF No. 1 at PageID 22.)

The Court heard Plaintiffs' Motion for Temporary Restraining Order on August 30, 2021 ("TRO Hearing"). (ECF No. 26.) Plaintiffs offered testimony from Dr. Sara Cross, Dr. Joi Wilson-Townsend, and the mothers of school-aged Plaintiffs G.S. and S.T. (Id.) Four days later, based on the Parties' written briefs, the live testimony, and the Parties' arguments at the hearing, the Court issued a Temporary Restraining Order, enjoining enforcement of EO 84 in Shelby County. (ECF No. 34.)

On September 9, 2021, at the hearing on Plaintiffs' Motion for Preliminary Injunction, the Government offered testimony from Theresa Nicholls, and Plaintiffs relied on the testimony previously offered at the TRO Hearing, as well as a supplemental declaration by Dr. Cross. (ECF Nos. 52 & 48.) Plaintiffs filed an Amended Complaint that same day. (ECF No. 54.) Considering Nicholls' testimony, the Parties' additional briefing, and the previous testimony offered at the TRO Hearing, the Court issued a Preliminary Injunction on September 17, 2021 that mirrored the injunctive relief provided in the TRO. (ECF No. 62.) In its Order, the Court concluded that Plaintiffs' claims under the ADA and Section 504 were likely to succeed on the merits, that irreparable harm would result without injunctive relief, and that enjoining EO 84 was both in the public interest and would not harm the Governor. (Id.)

Governor Lee then appealed this Court's Preliminary Injunction Order to the United States Court of Appeals for the Sixth Circuit. (ECF No. 66.) He moved to stay the injunctive relief pending the Sixth Circuit's decision, (ECF No. 68), which this Court denied. (ECF No.

72.) Also, on September 30, 2021, Governor Lee extended EO 84, and re-extended it on November 5, 2021 with Executive Orders similar in substance to EO 84. (ECF No. 69.) Given their similarities, the Court concluded that its existing Preliminary Injunction applied to the Governor's then-current and future Executive Orders seeking to provide the same "opt-out" provision as EO 84. (See ECF No. 72, Order Denying Motion to Stay, at PageID 1375-76 at n.1.) Governor Lee sought a stay of the preliminary injunction in the Sixth Circuit, which the Sixth Circuit denied. See G.S. v. Lee, No. 21-5915 (6th Cir.), ECF No. 12-1; see ECF No. 94. However, on December 10, 2021, upon consideration of the Parties' motion to voluntarily dismiss the Governor's appeal, the Clerk of the Sixth Circuit did so. (ECF No. 98.)

While the appeal was still pending, however, the Tennessee legislature passed the COVID Act, Tenn. Code Ann. §§ 14-1-101 to 14-6-104 ("COVID Act"). Governor Lee signed the COVID Act into law and issued Executive Order 92, which terminated EO 84 and its later iterations because, according to the Governor, the legislation "negates the need for" his previous Executive Orders.[2] (ECF No. 112-1.) Following the passage of the COVID Act, on March 28, 2022, the Court granted Governor Lee's Motion to Dismiss this lawsuit due to mootness. (ECF No. 127.)

As for the issue of attorney's fees, Plaintiffs filed their Motion for Interim Award of Attorneys' Fees and Costs, (ECF No. 101), on December 23, 2021. Governor Lee responded on January 13, 2022, after being granted additional time to do so, (ECF Nos. 104, 107), and Plaintiffs replied on January 20, 2022, after being granted leave to file a Reply. (ECF Nos. 110,

---

[2] Those Executive Orders were still enjoined across the state as a result of this and other federal litigation. See Amended Memorandum Opinion and Order, S.B. et al., v. Lee et al., 3:21-cv-00317-JRG-dcp (E.D. Tenn. Oct. 12, 2021); Memorandum Opinion, R.K. by & through J.K. v. Lee, No. 3:21-CV-00853, 2021 WL 5860924 (M.D. Tenn. Dec. 10, 2021).

111.) Finally, after the Court's Order Granting Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, (ECF No. 127), Plaintiffs filed their Notice of Renewal of Motion and Memorandum for Attorneys' Fees and Costs and of Supplemental Authority for Same. (ECF No. 128.)  While Governor Lee did not respond to this Renewal of Motion despite the opportunity to do so, the Court will assume that he relies on his previously-filed Response for all arguments on this issue.

## ANALYSIS

The Court first examines whether Plaintiffs are the prevailing party even after this lawsuit became moot.  Because Plaintiffs succeeded in obtaining a preliminary injunction that caused a court-ordered, material and enduring alteration in the legal relationship between Plaintiffs and Governor Lee, the Court **GRANTS IN PART** Plaintiffs' Motion, concluding that they "prevailed."  Turning to the amount of fees and costs requested, however, the Court cannot calculate that final amount without confirming whether Plaintiffs seek the same fees and costs as they did in their Motion for Interim Award.  Thus, the Court **DIRECTS** Plaintiffs to confirm their final requested fee amount **within ten (10) days** of this Order, and attach all supporting documents.

**I.      Prevailing Parties**

    **A.  Legal Standard**

While litigants typically pay their own attorney's fees, exceptions exist under certain statutory schemes.  One of these exceptions is codified in 42 U.S.C. § 12205, which provides that the "prevailing party" in an action to enforce civil rights under the ADA may recover "a reasonable attorney's fee, including litigation expenses, and costs."  To be eligible for a fee award, a plaintiff must cross the "statutory threshold" of prevailing party status.  Hensley v.

Eckerhart, 461 U.S. 424, 433 (1983).

A prevailing party is a litigant who "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109 (1992) (quoting Hensley, 461 U.S. at 433). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas State Teachers Ass'n v. Garland Ind. Sch. Dist., 489 U.S.782, 792–93 (1989).  Thus, a plaintiff does not have to succeed on every claim, or to litigate a case to final judgment, to achieve prevailing party status.  See Hewitt v. Helms, 482 U.S. 755, 761 (1987) ("A plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor."); Hensley, 461 U.S. at 431 (noting that there is not "a definitive answer as to the proper standard for setting a fee award where the plaintiff has achieved only limited success.").

Thus, a party who obtains injunctive relief before a case is mooted may still prevail. However, "the 'preliminary' nature of relief—together with the requirement that a prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action—will generally counsel against fees in the context of preliminary injunctions." McQueary v. Conway, 614 F.3d 591, 601 (6th Cir. 2010). "[W]hen a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." Id. at 604.

The determination of prevailing party status is "case-specific." Miller v. Caudill, 936 F.3d 442, 448 (6th Cir. 2019).  Courts are required to "look for a court-ordered, material, [and] enduring change in the legal relationship between the parties." Id.  "[F]or a change to have been court-ordered, the preliminary injunction must have caused it." Id.  "[F]or the change to have been material, it must have directly benefited plaintiffs by altering how [defendant] treated

6

them." Id. And "for a change to have been enduring, it must have been irrevocable, meaning it must have provided plaintiffs with everything they asked for." Id. Courts have found that, "where a plaintiff is granted preliminary injunctive relief that enjoins the government from acting at a particular time and place, the preliminary relief becomes, in effect, permanent relief after the event occurs." McQueary v. Conway, No. 06-CV-24-KKC, 2012 WL 3149344, at *3 (E.D. Ky. Aug. 1, 2012), aff'd, 508 F. App'x 522 (6th Cir. 2012) (referencing Watson v. County of Riverside, 300 F.3d 1092 (9th Cir. 2002) and Young v. City of Chicago, 202 F.3d 1000 (7th Cir. 2000)).

### B. Parties' Arguments

Plaintiffs argue that they achieved a court-ordered, material and enduring change in their legal relationship with Governor Lee by securing the Preliminary Injunction. (ECF No. 111 at PageID 1681.) They contend that the Temporary Restraining Order and Preliminary Injunction materially and immediately benefited them by invalidating EO 84, thus permitting "students to request and school districts to honor the ADA/Section 504 accommodation of universal masking." (Id. at PageID 1682.) Next, they argue that the change was enduring because they "obtained the very relief they sought." (Id.) Finally, they contend that (1) the Governor "ignores a trilogy of binding Sixth Circuit cases" that directly address why attorneys' fees are appropriate when plaintiffs have first obtained injunctive relief before a case becomes moot, (Id. at PageID 1681-82 (citing Thomas v. Haslam, 2021 U.S. App. LEXIS 25897 (6th Cir. Aug. 25, 2021); Miller v. Caudill, 936 F.3d 4 42 (6th Cir. 2019); Green Party of Tennessee v. Hargett, 767 F.3d 533 (6th Cir. 2014)), and that (2) a District of Colorado court's analysis, finding that plaintiffs in "a similar school masking case" were the prevailing parties, encourages a similar finding here. (ECF No. 128 at PageID 1775; see ECF No. 128-1, Supplement, Douglas Cnty. Sch. Dist. Re-1

7

v. Douglas Cnty. Health Dep't, No. 21-cv-2818-JLK, 2022 WL 596275 (D. Colo. Feb. 28, 2022).)

In response, Governor Lee argues that the injunctive relief obtained by Plaintiffs was not court-ordered because Plaintiffs' relief actually flowed from his voluntary conduct –terminating EO 84 after the COVID Act passed – rather than from the Court's preliminary injunction. (ECF No. 107.) As to whether the preliminary injunction caused an enduring change, Governor Lee likens the case to McQueary v. Conway, No. 06-CV-24-KKC, 2012 WL 3149344 (E.D. Ky. Aug. 1, 2012), aff'd, 508 F. App'x 522 (6th Cir. 2012), where the district court, on remand, found that the plaintiff did not prevail because his secured relief was not permanent, given the plaintiff's request for a permanent injunction. Id. at *3. Thus, he argues that the Plaintiffs' failure to achieve their request for a permanent injunction dooms their motion as well. Because Governor Lee only challenges whether the relief was court-ordered and enduring, but not material, the Court focuses only on these two factors, finding that Plaintiffs satisfy both.

First, the Court looks to Miller v. Caudill "to make the abstract concrete."[3] 936 F.3d at 448. In Miller, a county clerk refused to issue any marriage licenses in the wake of the Supreme Court's legalization of same-sex marriage in Obergefell v. Hodges, 576 U.S. 644 (2015). Id. at 446. After the plaintiffs obtained injunctive relief against the clerk, the case was mooted due to two governmental actions: (1) the Kentucky Governor issued an Executive Order establishing a revised marriage license that did not contain the name of a county clerk, and (2) the legislature subsequently passed a law ensuring that clerks did not have to sign marriage licenses. Id. at 447.

---

[3] Two of Plaintiffs' cited cases are not on point here. While the Sixth Circuit did make "prevailing party" determinations in both Thomas v. Haslam, 2021 U.S. App. LEXIS 25897 (6th Cir. Aug. 25, 2021) and Green Party of Tennessee v. Hargett, 767 F.3d 533, 522 (6th Cir. 2014), it did so in both cases after orders granting summary judgment, not after granting preliminary injunctions.

In their review of the district court's determination that the plaintiffs prevailed even though the case was moot, the Sixth Circuit concluded that the plaintiffs obtained a court-ordered, material, and enduring change in the legal relationship with the defendant. The change was "court-ordered" because the preliminary injunction created the opportunity for the plaintiffs to secure marriage licenses, before any legislative or executive action took place. Id. at 449. The change was enduring because the county clerk could no longer control whether the plaintiffs married. And, even though the plaintiffs sought other forms of relief, including a permanent injunction and declaratory judgment, the court found that "everything they sought arose from [the clerk's] refusal to issue marriage licenses . . . [and] they succeeded on that claim." Id. The court considered them the prevailing party, because the preliminary injunction gave them exactly what they sought – the opportunity to obtain marriage licenses in that county.

Similarly, here, the relief was court-ordered, an injunction in favor of Plaintiffs. "In the context of a preliminary injunction . . . 'there is only prevailing party status if the injunction represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.'" McQueary, 614 F.3d at 591 (citing Dubuc v. Green Oak Township, 3121 F.3d 736, 753 (6th Cir. 2002)(internal citations omitted)). Indeed, in both its TRO and Preliminary Injunction Order, the Court emphasized Plaintiffs' likelihood of success on the merits. (See ECF No. 34; ECF No. 62 at PageID 1241 ("Plaintiffs are likely to be successful on the merits of their claim. Plaintiffs offered sufficient evidence at this stage to demonstrate that the Executive Order interferes with Plaintiffs' ability to safely access their schools.").)

Additionally, even if later legislative action intervened to moot the case, the preliminary injunction created the opportunity for students to access school safely before any legislative or

9

executive action took place.  Before the injunction, by allowing parents to opt their children out, the Governor refused to allow universal masking policies to be implemented by the Shelby County Health Department or accessed by students; after the injunction, his opt-out provision was no longer permitted.  Governor Lee was ordered to allow the Health Department to determine appropriate county-wide health policies, and to permit Plaintiffs to access needed accommodations.  Moreover, the Court enjoined the enforcement not only of EO 84, but all subsequent Executive Orders that would hinder Plaintiffs' ability to access their schools.  (See ECF No. 72, Order Denying Motion to Stay, at PageID 1375-76 at n.1.)  Thus, students could access schools safely as a direct result of the injunction and its extension to subsequent Executive Orders.

The relief was also enduring.  The plaintiffs in Miller sought permanent injunctive and declaratory relief yet still prevailed after obtaining a preliminary injunction because everything they sought was obtained at that point.  936 F.3d at 450.  Similarly, Plaintiffs here sought permanent relief in their Complaint, but achieved their objective when the Court first issued temporary injunctive relief, followed by the preliminary injunctive relief, that allowed their children safe access to in-person education by enjoining the Governor's Executive Order.  (See ECF No. 62 at PageID 1241.)

In the Colorado district court decision referenced by Plaintiffs, the court concluded that the plaintiffs prevailed after achieving a temporary restraining order under similar facts.  Douglas Cnty. Sch. Dist., 2022 WL 596275, at *7.  There, the plaintiffs sought to enjoin a county public health order allowing parents to opt their children out of masking mandates in school.  Id. at *2.  The court found it "unnecessary" for the plaintiffs to obtain a permanent injunction, and that the TRO "materially altered the legal relationship of the parties by temporarily granting Plaintiffs

precisely the relief requested." Id. at *7.  While out-of-circuit, this case's factual circumstances support the Court's conclusion that Plaintiffs prevailed.  "A win is a win – regardless of whether the winner runs up the score."  See Miller, 936 F.3d at 450.

Governor Lee's argument that the preliminary injunction was too short to be enduring, relying on McQueary, is unpersuasive because here, revoking the preliminary injunction would not change that Plaintiffs got "everything they asked for" when it was issued.  See Miller, 936 F.3d at 448.  In McQueary, the plaintiff sought to enjoin the state of Kentucky from enforcing a law that criminalized protesting at military funerals.  McQueary v. Conway, 2012 WL 3149344, at *1.  His complaint aimed to enjoin the law in all of its current and future applications, not as it applied to one funeral in particular.  While the plaintiff secured a preliminary injunction to enjoin the statute, the state repealed the statute and mooted the case before his request for a permanent injunction was granted.  Id.  Thus, on remand, the court concluded that the plaintiff did not prevail: the preliminary injunctive relief was "truly temporary and revocable" because the plaintiff did not secure the "enduring" relief he sought in the form of his right to protest at all military funerals, irrespective of time and place, because the state voluntarily changed the statute first.  Id. at *3.

When remanding the McQueary case back to the district court for a determination of prevailing party status, the Court of Appeals provided an example where time and place did matter as to whom prevailed:

> When protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will give them all the court-ordered relief they need and the end of the parade will moot the case.  In what way are such claimants not prevailing parties?  We think they are.  See Young v. City of Chicago, 202 F.3d 1000, 1000 (7th Cir.2000) (awarding fees to protestors who obtained a preliminary injunction to protest at the 1996 Democratic National Convention, which was the only relief sought).

11

McQueary, 614 F.3d at 599 (6th Cir. 2010).  Thus, protestors who obtained the opportunity to demonstrate at the parade, even if the end of the parade mooted the case, secured the relief they sought – opportunity to protest at that parade – even if the enjoined party later decided to allow demonstrations at future parades.

The cases relied on by the Parties are instructive as to their interpretation of how plaintiffs did or did not prevail in other circumstances, but the determination of prevailing party status is "case-specific," see Miller, 936 F.3d at 448, and the circumstances here are unique.  Here, Plaintiffs sought the opportunity to access their schools at a particularly historical and distinctive moment in time.  Put another way, the Court considered Plaintiffs' claims amidst a virulent pandemic at one of its (many) peaks, when most students, including Plaintiffs, were unable to be vaccinated.  The Governor's Executive Order was therefore uniquely threatening at that time to the safety of children in accessing in-person education in Shelby County – a threat that had not been considered in litigation in this District before.  Thus, when issuing the Preliminary Injunction, the Court altered the legal relationship between the Plaintiffs and Governor in way that was not only novel, but achieved what Plaintiffs sought under those circumstances: it stripped the Governor of his ability to impose an Executive Order restricting the Shelby County Health Department, and schools, from implementing ADA accommodations uniquely suitable to the stakes involved in the ongoing public health crisis at that point in time.

Now, the COVID-19 pandemic is in a different phase (albeit with the full opportunity to reenergize in virulence and breadth), school-age children are, in large part, able to be vaccinated, and this case is now moot.  Yet Plaintiffs already obtained access to in-person school at the time that their health was particularly threatened by the Governor's Executive Order.  That relief cannot be revoked.  In fact, it is unclear whether the same accommodation would be necessary

now, given the change in circumstances – but whether further relief would be granted is immaterial here, because Plaintiffs sought and obtained an end to the Governor's opt-out provision when it threatened the health of their vulnerable children in accessing in-person education. They have not sought a permanent injunction in any filing besides the original and Amended Complaint, presumably because the Preliminary Injunction did its job. Subsequent legislative or executive action therefore does not strip Plaintiffs of their prevailing party status.

## II.     Calculation of the Proper Fees

In their submitted documents, Plaintiffs provide documented hours of work between August 19, 2021, and December 9, 2021. (ECF No. 101-2 at PageID 1550.) Plaintiffs' affidavits also end in December 2021, while this case was still pending. (See ECF No. 101-3 at PageID 1561.) Given the passage of time since this original Motion, and multiple other filings since December 2021, the Court **DIRECTS** Plaintiffs to confirm whether the numbers of hours worked, and the amount of attorney's fees and costs requested, as demonstrated in their Motion for Interim Award, are still the final amounts. When that number is clarified, the Court will conduct a calculation of the proper fees and whether any adjustments are needed.

## CONCLUSION

Based on the above analysis, the Court **GRANTS IN PART** Plaintiffs' Motion because they prevailed. Turning to the amount of fees and costs requested, however, the Court cannot calculate that final amount without confirming whether Plaintiffs seek the same fees and costs as they did in their Motion for Interim Award. Thus, the Court **DIRECTS** Plaintiffs to confirm their hours worked and requested fee amount **within ten (10) days** of the date of this Order.

**IT IS SO ORDERED,** this 21st day of April, 2022.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE